Darryn REID, Plaintiff,

v.

Leanna R. BENZ, Defendant-Respondent-Cross-Appellant,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant-Appellant-Cross-Respondent,

TRANSPORTATION INSURANCE COMPANY, Defendant.

Supreme Court

*No. 00–0003. Oral argument May 29, 2001.—Decided July 11, 2001.*

2001 WI 106

(Also reported in 629 N.W.2d 262.)

For the defendant-appellant-cross respondent there were briefs by *Frederick J. Smith* and *Peterson, Johnson & Murray, S.C.*, Milwaukee, and oral argument by *Frederick J. Smith*.

For the defendant-respondent-cross appellant there was a brief by *Tamara Hayes O'Brien* and *Whyte Hirschboeck Dudek S.C.*, Milwaukee, and oral argument by *Tamara Hayes O'Brien*.

An amicus curiae brief was filed by *Matthew A. Biegert, Brian H. Sande* and *Doar, Drill & Skow, S.C.*, New Richmond, on behalf of the Wisconsin Academy of Trial Lawyers.

An amicus curiae brief was filed by *Arnold P. Anderson* and *Mohr & Anderson, S.C.*, Madison, on behalf of the Wisconsin Insurance Alliance.

An amicus curiae brief was filed by *Arnold P. Anderson* and *Mohr & Anderson, S.C.,* Madison, on behalf of Civil Trial Counsel of Wisconsin.

¶ 1. N. PATRICK CROOKS, J. This case is before the court on certification by the court of appeals, pursuant to Wis. Stat. § (Rule) 809.61 (1999–2000). The court of appeals certified the following issue: Was the supreme court's award of attorney fees to an insured in *Elliott v. Donahue,* 169 Wis. 2d 310, 485 N.W.2d 403 (1992), premised upon the insurer's contractual breach of the duty to provide coverage or the duty to defend or both?

¶ 2. Before answering the court of appeals certified issue, we point out that *Elliott* made it clear that "[u]nder the well-established American Rule, parties to litigation are generally responsible for their own attorney fees incurred with respect to the litigation. Attorney fees are generally not awarded to the prevailing party in the absence of a statute or enforceable contract providing therefor." 169 Wis. 2d at 323. This case is not about consumer protection, contrary to the suggestion by the dissent. *See* dissenting op. at ¶ 39. The issue before us pertains to the basis of our award of attorney fees in *Elliott,* and the reasons for diverging from the deeply-rooted dictates of the American Rule in that case.

¶ 3. Our attorney fees award was premised on the equities of the situation in *Elliott,* which related to the insurer's contractual breach of the duty to defend. The award was inextricably connected to the facts and circumstances of that case; namely, that the insurer failed to comply with the dictates of *Mowry v. Badger State Mutual Casualty Co.,* 129 Wis. 2d 496, 385

661

N.W.2d 171 (1986). In *Mowry*, we indicated that an insurer can avoid the risk of breaching the duty to defend by seeking bifurcation of the coverage and liability issues, and a stay of the liability phase until coverage has been decided. *Id.* at 528–29. Where an insurer fails to follow that procedure, as the insurer did in *Elliott*, the insurer does indirectly what it cannot do directly. The insurer breaches the duty to defend by requiring the insured to incur attorney fees to defend him or herself on the issue of liability and to litigate coverage simultaneously.

¶ 4. In this case, American Family Mutual Insurance Company (American Family) appealed that part of an order for judgment of the Ozaukee County Circuit Court, the Honorable Walter J. Swietlik presiding, which, based upon *Elliott*, awarded attorney fees to Leanna R. Benz (Benz), an insured of American Family. There is no dispute that American Family followed the procedure established in *Mowry*. Consequently, the basis for the attorney fees award in *Elliott* is absent here. Accordingly, that part of the circuit court's order for judgment that awarded attorney fees to Benz is reversed.

I

¶ 5. The pertinent facts are not in dispute. In October, 1998, Darryn Reid (Reid) brought the instant action against Benz, American Family, and Transportation Insurance Company.[1] Reid alleged that he slipped, fell, and injured himself on the driveway at Benz's home. Benz tendered·her defense to American Family, which had issued a homeowner's policy to

---

[1] Transportation Insurance Company is not involved in this appeal.

Benz, and which was in effect at the time of Reid's accident. American Family assigned counsel to defend Benz, subject to a reservation of rights.

¶ 6. In January, 1999, American Family moved to bifurcate the issue of liability from the issue of whether Benz was covered by its policy, claiming that the business pursuits exclusion in the policy applied and, on that basis, Benz was not covered. American Family also requested a stay of any liability proceedings until the coverage issue had been resolved. At the initial pretrial conference, Benz was represented by counsel retained by American Family on the merits, and by separate counsel on the coverage issue. There, the parties, and the circuit court judge, agreed that the coverage issue would be bifurcated and that a motion regarding coverage would be heard in April, 1999.

¶ 7. In March, 1999, American Family moved for summary judgment dismissing Reid's complaint against it, and moved for a declaration that American Family had no further duty to defend or indemnify Benz. In response, Benz filed a brief in opposition to American Family's motion for summary judgment, and a motion for a declaration that American Family was obligated to continue to defend and indemnify her. Benz also sought a declaration that American Family was "obligated to reimburse her for all costs and attorney fees incurred in defending and establishing American Family's duties of defense and indemnification." (R. at 22:1.) This motion was set to be heard at the same time as American Family's motion for summary judgment.

¶ 8. On April 23, 1999, the circuit court heard American Family's summary judgment motion and Benz's declaratory judgment motion. The circuit court found that an exception to the business exclusion

applied, and, correspondingly, that American Family had a duty to defend and indemnify Benz. The court also found that Benz was entitled to recover the reasonable costs and attorney fees incurred, with respect to American Family's motion for summary judgment and her motion for declaratory judgment.

¶ 9. American Family moved for reconsideration of the circuit court's order regarding attorney fees and costs. In response, Benz requested an additional award of fees incurred in connection with American Family's motion for reconsideration. While these motions were pending, American Family petitioned the court of appeals for leave to appeal the circuit court's order denying American Family's motion for summary judgment. The court of appeals denied the petition for interlocutory appeal, and Benz moved the circuit court for an additional award of attorney fees incurred in responding to American Family's petition for leave to appeal.

¶ 10. The circuit court denied American Family's motion for reconsideration, and found that Benz was entitled to recover attorney fees incurred in responding to American Family's motion for reconsideration. The court also denied Benz's motion for attorney fees for opposing American Family's petition for leave to appeal.

¶ 11. Reid, American Family, and Benz settled the underlying action, and judgment was entered in favor of Benz and against American Family for attorney fees and costs.[2] American Family appealed the

_____

[2] In addition to an award for attorney fees incurred in connection with American Family's motion for summary judgment, Benz's motion for declaratory judgment, and American Family's motion for reconsideration, the judgment included an award of statutory costs and disbursements. Neither the court of appeals

judgment, and Benz cross-appealed the circuit court's denial of her request for attorney fees and costs, incurred in opposing American Family's petition for leave to appeal. The court of appeals certified the issue of attorney fees in American Family's appeal for our review and determination, and we accepted the appeal.[3]

## II

¶ 12. We review the circuit court's decision to award Benz attorney fees *de novo*. "Whether an insured can recover attorney's fees as damages is a question of law which this court decides independently and without deference to the lower courts." *DeChant v. Monarch Life Ins. Co.*, 200 Wis. 2d 559, 568, 547 N.W.2d 592 (1996) (citing *Newhouse v. Citizens Security Mut. Ins. Co.*, 176 Wis. 2d 824, 501 N.W.2d 1 (1993)). In addition, the question before us concerns our rationale for the award of attorney fees in *Elliott*, 169 Wis. 2d 310. This necessarily involves a question of law

certification nor the parties' briefs indicate that there is a dispute regarding the award of costs. We thus do not address this part of the judgment.

[3] The court of appeals did not certify the issue raised by Benz's cross-appeal. However, in granting certification here, this court "accepted for consideration. . .all issues raised before the court of appeals." The parties did not specifically address Benz's entitlement to attorney fees in opposing American Family's petition for leave to appeal the circuit court's order in their briefs or their oral argument to this court. Nonetheless, because we have determined that Benz is not entitled to recover attorney fees under *Elliott v. Donahue*, 169 Wis. 2d 310, 485 N.W.2d 403 (1992), Benz's cross-appeal, as the court of appeals suggested in its certification might occur, has become moot.

that we review, or determine, independently of a lower court's decision, but benefiting from the analysis of the court. *See Mowry*, 129 Wis. 2d at 527; *see also Smith v. General Cas. Ins. Co.*, 2000 WI 127, ¶ 7, 239 Wis. 2d 646, 619 N.W.2d 882.

¶ 13. We begin, as we must, with *Elliott.* The facts and circumstances that gave rise to our decision in *Elliott* are particularly significant, because our reasoning therein is inextricably connected to those facts and circumstances. Karen Elliott had brought an action against Michael Donahue, among others, to recover for her injuries caused by an automobile accident in which Donahue was involved. Donahue had been driving an uninsured car owned by David Mikrut. Donahue tendered his defense to Heritage Mutual Insurance Company (Heritage), based upon an insurance policy his stepmother had from Heritage which covered Donahue while he was operating another's car, so long as he had the reasonable belief that he had permission to do so. Heritage responded that it was denying coverage, based upon a non-permissive use exclusion in the policy, because Donahue did not have Mikrut's permission to be driving the car. Heritage advised Donahue to retain counsel at his own expense, which he did. Heritage then requested a bifurcated trial to determine the coverage issue separate from the issues of liability and damages, and bifurcation was subsequently ordered. "However, proceedings on the claim for damages were not suspended pending resolution of the coverage issue. Donahue's counsel represented him on both the claims for damages as well as in the coverage dispute." *Elliott*, 169 Wis. 2d at 315.

¶ 14. At the bifurcated trial on coverage, the jury found that Donahue did have permission to drive Mikrut's vehicle. The circuit court entered judgment

that Donahue was covered by the Heritage policy. Heritage assumed Donahue's defense and settled the claims against him. Donahue then sought to recover costs and reasonable attorney fees incurred, which motion the circuit court denied. On appeal, the court of appeals affirmed the determination that Donahue could not recover attorney fees and costs with respect to the coverage issue, but reversed the circuit court and held that Donahue could recover attorney fees and costs incurred in defending himself on the merits. *Id.* This court reversed the court of appeals, insofar as it concluded that Donahue was not entitled to recover attorney fees incurred in defending coverage. *Id.* at 314.

¶ 15. Before this court, Donahue contended that he was entitled to an award of attorney fees incurred in defending coverage, because Heritage breached its duty to defend by denying coverage. Heritage responded that it had not breached its duty to defend, because coverage was fairly debatable, and it had acted consistent with the requirements of *Mowry*.[4] *Elliott*, 169 Wis. 2d at 316.

¶ 16. We agreed that Heritage had not breached its duty to defend when it contested coverage. "An insurer does not breach its contractual duty to defend by denying coverage where the issue of coverage is fairly debatable as long as the insurer provides coverage and defense once coverage is established." *Id.* at 317. However, we disagreed that Heritage had complied with the dictates of *Mowry*.

[4] Notably, no one contended that Heritage's initial denial of coverage was in bad faith or unreasonable. *Elliott*, 169 Wis. 2d at 317 n.1.

> While a bifurcated trial was ordered in this case, the coverage and liability issues were litigated simultaneously, forcing Donahue to retain counsel to simultaneously defend him in both aspects of the case. To be entirely consistent with *Mowry*, the insurer should not only request a bifurcated trial on the issues of coverage and liability, but it should also move to stay any proceedings on liability until the issue of coverage is resolved. Heritage failed to do so. The *Mowry* court advised that an "insurer may need to provide a defense to its insured when the separate trial on coverage does not precede the trial on liability and damages." [129 Wis. 2d at 528] Because Heritage did not provide such needed defense, it is liable to Donahue for the attorney fees incurred by Donahue with respect to the liability issue. *See Meiser v. Aetna Casualty & Surety Co.*, 8 Wis. 2d 233, 240–41, 98 N.W.2d 919 (1959).

*Elliott*, 169 Wis. 2d at 318.

¶ 17. In *Meiser*, as in *Elliott*, we concluded that, under the circumstances, the insured was entitled to recover attorney fees incurred not only with regard to liability, but also in regard to coverage. There, the insurer wrongfully refused to defend the insured against the claim. *Meiser v. Aetna Cas. & Sur. Co.*, 8 Wis. 2d 233, 240, 98 N.W.2d 919 (1959). The insured retained counsel, who negotiated a settlement with the claimant for the loss, and who then filed a lawsuit to establish coverage. We affirmed the circuit court's decision that the loss was covered, and further affirmed the court's award of reasonable attorney fees incurred in defending against the loss and establishing coverage. The fee award was tied to the insurer's refusal to defend.

[The insurer] denied the claim. Thus, [the insured] was obliged to engage the services of attorneys to protect his interests, and the trial court found that negotiations for settlement of the loss were undertaken by said attorneys and this action was commenced to recover damages of the [insurer] by reason of its breach of contract in failing to investigate, adjust, and defend the [insured] against the loss.

*Id.*

██

¶ 18. *Meiser*, however, was decided long before *Mowry*. In *Mowry*, we held that an insurer has not breached its contractual duty to defend when it "initially denied coverage because it believed that coverage under the policy was fairly debatable." 129 Wis. 2d at 528. Also, the insurer not only had requested bifurcation of coverage and liability, and that a trial on coverage would precede a trial on liability, but also had stipulated that "the issues of liability and damages were to be held in abeyance until the resolution of the coverage issue." *Id.* at 506. In contrast, in *Elliott*, Heritage had requested bifurcation, but "proceedings on the claim for damages were not suspended pending resolution of the coverage issue." 169 Wis. 2d at 315. Donahue thus needed a defense on the merits, but Heritage did not provide him such a defense. As we pointed out in *Mowry*, and repeated in *Elliott*, "[a]n insurer may need to provide a defense to its insured when the separate trial on coverage does not precede the trial on liability and damages." *Mowry*, 129 Wis. 2d at 528. Heritage failed to move for a stay of proceedings on the merits, which resulted in Donahue needing a defense—a defense Heritage failed to provide.

■■

¶ 19. Even though our conclusion to award attorney fees in *Elliott* was premised upon Heritage's failure to follow the dictates of *Mowry*, that conclusion is intertwined with the equitable considerations that arise where an insurer refuses to defend the insured and the coverage and liability phases proceed simultaneously. *See Elliott*, 169 Wis. 2d at 322–23. Those equitable considerations arise from the scope of the insurer's duty to defend, as compared to its duty to indemnify. We reiterated in *Elliott* that the duty to defend is broader than the duty to indemnify. "The duty of defense depends on the nature of the claim and has nothing to do with the merits of the claim." *Id.* at 321. The duty to indemnify, in contrast, arises when a claim is shown to be within the parameters of the terms of the policy, that is the claim is within the parameters of the policy *and* the insured is adjudged liable. *Id.* at 320–21; *see also Smith v. Katz*, 218 Wis. 2d 442, 448 n.3, 578 N.W.2d 202 (1998) (an insurance policy imposes a duty to indemnify the insured if the insured is found liable); *General Cas. Co. of Wisconsin v. Hills*, 209 Wis. 2d 167, 176, 561 N.W.2d 718 (1997) (the duty to indemnify is dependent upon whether the claim is resolved in favor of, or against, the insured). Although coverage was disputed, the duty to indemnify did not arise in *Elliott* because once there was a determination that Donahue was covered, Heritage settled the pending claims against him. 169 Wis. 2d at 315.

¶ 20. In particular, it was the equities related to the duty to defend that prompted us to award attorney fees to the insured in *Elliott*.

> Where an insurer failed to defend until after an adverse decision in a declaratory judgment action

instituted by it, such insurer was held not liable to pay the attorneys' fees and expenses incurred by the insured in the declaratory judgment action, in the absence of fraud, bad faith, or stubborn litigiousness on the part of the insurer. Some courts have qualified this rule on the assumption that the expenses were incurred at "the request of the insurer" and therefore came within the policy provision for reimbursement of the insured for reasonable expenses, or on the theory that since suit was brought by a third party, the insurer owes a duty to defend. But, despite the qualifications placed upon this rule by the court, it still appears to be unfair to the insured. After all, the insurer had contracted to defend the insured, and it failed to do so. It guessed wrong as to its duty, and should be compelled to bear the consequences thereof. If the rule laid down by these courts should be followed by other authorities, it would actually amount to *permitting the insurer to do by indirection that which it could not do directly. That is, the insured has a contract right to have actions against him defended by the insurer, at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually no better off financially than if he had never had the contract right mentioned above.* Other courts have refused to impose such a burden upon the insured.

*Id.* at 322–23 (quoting Appleman, *Insurance Law and Practice*, sec. 4691, at 281–83 (Berdal ed. 1979) (emphasis added)).[5]

---

[5] Contrary to the dissent, this court's decision to award attorney fees in *Elliott* did "relate[ ] back," to the insurer's breach of the duty to defend. *See* dissenting op. at ¶ 52. As evident in the quote from Appleman's *Insurance Law and Prac-*

¶ 21. It was the inequity of the circumstances facing us in *Elliott*—that the insurer was attempting to avoid its duty to defend indirectly by adjudicating coverage without seeking a stay of liability—that prompted us to award the attorney fees the insured incurred. We reasoned that it was only fair that the insurer be held liable for the attorney fees that the insured incurred, when the insurer denied coverage in such a way that forced the insured to incur fees to defend himself. That was contrary to the dictates of *Mowry*.

¶ 22. We have directed insurers to follow *Mowry* to avoid such exposure.

> In *Elliott*, we clearly stated that the proper procedure for an insurance company to follow when coverage is disputed is to request a bifurcated trial on the issues of coverage and liability and move to stay any proceedings on liability until the issue of coverage is resolved. [169 Wis. 2d at 318.] When this procedure is followed, the insurance company runs no risk of breaching its duty to defend.

*Newhouse,* 176 Wis. 2d at 836. *Newhouse* aptly illustrates that an insurer breaches the duty to defend when it fails to follow the procedure laid out in *Mowry*

tice, which pointed out the duty to defend no less than four times, this court's rationale was inseparable from the breach of that duty. Moreover, as this court noted twice since *Elliott*, the award of attorney fees was tied to the breach of the duty to defend, and we "decline[d] to extend *Elliott* beyond its particular facts and circumstances." *DeChant v. Monarch Life Ins. Co.,* 200 Wis. 2d 559, 569, 547 N.W.2d 592 (1996); *see also Gorton v. Hostak, Henzl & Bichler, S.C.,* 217 Wis. 2d 493, 512, 577 N.W.2d 617 (1998).

and *Elliott*. In *Newhouse*, the insurer "did not follow the proper procedure. [The insurer] refused to accept the circuit court's offer to stay the liability trial until the appeal on the coverage issue was final." 176 Wis. 2d at 836. The insurer also refused to provide a defense to the insured at the liability trial, and thereby breached the duty to defend. *Id.* at 837.

¶ 23. *Newhouse* and other cases concern an insurer's *direct* breach of the duty to defend, that is, the insurer wrongfully refuses to provide the insured with a defense. *See Newhouse*, 176 Wis. 2d at 836; *see also Towne Realty, Inc. v. Zurich Ins. Co.*, 201 Wis. 2d 260, 269–70, 548 N.W.2d 64 (1996). *Elliott*, in contrast, involves an insurer's *indirect* breach. Heritage did not comply with the procedure approved in *Mowry*. Consequently, even though Heritage had legitimately contested coverage, it forced Donahue to defend himself, at his expense, by refusing to seek an order staying the liability phase, while the coverage phase was being tried. Heritage did "by indirection that which it could not do directly,"—avoid its duty to defend. *Elliott*, 169 Wis. 2d at 323 (quoting Appleman, *Insurance Law and Practice*, sec. 4691, at 281–83 (Berdal ed. 1979)). Hence, it was the inherent unfairness of Heritage's tactic, which justified our award of attorney fees.

¶ 24. The "necessary and proper" provision (Wis. Stat. § 806.04(8)) (1999–2000) of the Uniform Declaratory Judgments Act provided the means by which we awarded Donahue attorney fees.[6] "[Section] 806.04(8),

---

[6] At the time we decided *Elliott*, Wis. Stat. § 806.04(8) provided in pertinent part:

Supplemental relief. Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the

Stats., permits a recovery of attorney fees in this case because the recovery is proper under the principles of equity." *Elliott*, 169 Wis. 2d at 324. Because § 806.04(8) allowed the court to award such supplemental relief, the court did not have to "fashion an exception to the American Rule. . . ." *Id.* at 325.

¶ 25. In addition to contending that he was entitled to an attorney fees award, because Heritage had breached its contractual duty to defend, and that the principles of equity demanded the award, Donahue also argued that Heritage was required to reimburse him because he had, in effect, incurred the fees at Heritage's request. *Id.* at 318–19. We considered that "[c]ourts in several other jurisdictions have held that attorney fees are recoverable by the insured in defending against an insurer's declaratory judgment action where the insurance policy provides reimbursement for all reasonable expenses incurred at the request of the insurance company." *Id.* at 319. However, we expressly declined to adopt this approach because Wis. Stat. § 806.04(8) provided the court the means to recognize the equities of the situation, and, according to those equities, allow for a recovery of attorney fees. *Id.* at 323–24 (citing and quoting *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 351 N.W.2d 156 (1984)).

¶ 26. Since *Elliott*, we have emphasized that the insurer there, Heritage, had failed to fulfill its contractual duty to defend. *Gorton v. Hostak, Henzl & Bichler,*

court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith.

*Elliott,* 169 Wis. 2d at 324. This provision of § 806.04(8) has not changed to date. *See* Wis. Stat. § 806.04(8) (1999–2000).

*S.C.*, 217 Wis. 2d 493, 511, 577 N.W.2d 617 (1998); *DeChant*, 200 Wis. 2d at 569; *see also Ledman v. State Farm Mut. Auto. Ins. Co.*, 230 Wis. 2d 56, 70, 601 N.W.2d 312 (Ct. App. 1999).[7] We also have emphasized that it was the *"limited circumstances"* presented in *Elliott* that prompted the court to exercise its equitable power to award attorney fees to the insured. *DeChant*, 200 Wis. 2d at 569 (emphasis added); *see also Gorton*, 217 Wis. 2d at 512; *Ledman*, 230 Wis. 2d at 70.

¶ 27. Awarding attorney fees, as we did in *Elliott*, should not be the usual result. The circumstances in *Elliott*—that coverage was not decided before liability, and that the liability proceeding was not held in abeyance while coverage was being considered—is atypical. Over thirty years ago, we noted that "in many cases policy defenses are now tried before the liability issue. . . ." *Iowa Nat'l Mut. Ins. Co. v. Liberty Mut. Ins. Co.*, 43 Wis. 2d 280, 288, 168 N.W.2d 610 (1969). In

---

[7] *Ledman v. State Farm Mutual Automobile Insurance Co.*, 230 Wis. 2d 56, 601 N.W.2d 312 (Ct. App. 1999) correctly applied *Elliott*. Arguably, another recent court of appeals decision, *Sauk County v. Employers Insurance of Wausau*, 2001 WI App 22, 240 Wis. 2d 608, 623 N.W.2d 174 (Ct. App. 2000) (*Sauk County II*), did not, insofar as it awarded attorney fees to the insured to establish coverage where there was no indication that there was also, directly or indirectly, a breach of the duty to defend. *See Sauk County v. Employers Ins. of Wausau*, 202 Wis. 2d 433, 437, 550 N.W.2d 439 (Ct. App. 1996) (*Sauk County I*). However, we declined to review *Sauk County II*, 2001 WI App 22, and accordingly, decline to express an opinion as to the attorney fees awarded there, because it appears that the award was premised upon the duty to indemnify, rather than upon a breach of the duty to defend, as in *Elliott*. *See Sauk County II*, 2001 WI App 22, ¶ 14. Our decision here, interpreting and applying *Elliott*, hopefully clears up any misunderstandings or misapplications of the legal principles in *Elliott*.

*Mowry*, we observed that "once an order to bifurcate has been made, a trial on a coverage issue should be a relatively simple matter." 129 Wis. 2d at 529 n.4. We also encouraged a court which has ordered bifurcation to expedite resolution of the coverage issue. *Id.*

¶ 28. It is because of the unusual situation presented in *Elliott*, that "we have expressly declined 'to extend Elliott beyond its particular facts and circumstances.'" *Gorton*, 217 Wis. 2d at 512 (quoting *DeChant*, 200 Wis. 2d at 569). And yet, this is exactly what is asked of us here.

### III

¶ 29. Benz contends that she is entitled to recover attorney fees expended in establishing that American Family's policy covers Reid's claim against her. She does not contend that she incurred attorney fees in defending against Reid's claim. The issue is whether *Elliott* permits recovery of attorney fees expended solely in establishing coverage, where there has been no breach of the duty to defend.

¶ 30. During oral argument, Benz and American Family, through respective counsel, agreed that an insured's entitlement to attorney fees should not stand or fall based upon the procedural device used to present the coverage issue in a case. We agree. It makes no difference whether the parties seek to resolve a coverage dispute via a declaratory judgment action or a summary judgment motion.[8] In *Elliott*, we awarded attorney fees under Wis. Stat. § 806.04(8), the Uniform Declaratory Judgments Act, even though there appar-

_____

[8] It also makes no difference whether the cases involve first-party or third-party claims, contrary to Benz's attempts to distinguish *Ledman*, 230 Wis. 2d 56, and *DeChant*, 200 Wis. 2d 559, because they involve first-party claims.

676

ently was no declaratory judgment action there. A jury decided the driving-with-permission issue and the judge entered judgment finding coverage. *Elliott*, 169 Wis. 2d at 315. In *Scottish Guarantee Insurance Co. v. Dwyer*, 19 F.3d 307, 308, 312 (7th Cir. 1994), coverage was determined via a declaratory judgment action and an award of attorney fees was made, based upon our decision in *Elliott*.[9]

¶ 31. Benz makes three basic contentions as to why she is entitled to recover attorney fees here: (1) Benz was deprived of a benefit she bargained for by paying premiums, namely, indemnity, by having to incur attorney fees to establish coverage; (2) the same equitable principles that supported the award of attorney fees in *Elliott* exist in this case; and, (3) Benz essentially incurred expenses—attorney fees—at the request of American Family, when American Family contested coverage. We address each in turn.

¶ 32. Benz's first contention is based upon a misreading of *Elliott*. We said in *Elliott* that "[i]ndemnification and defense *for claims falling within the parameters of the insurance policy* are the two primary benefits received by the insured from a contract of insurance." 169 Wis. 2d at 321 (emphasis added). We made it clear that, in return for premiums paid, the insurer provides indemnification of those claims found to be valid and to be covered by the policy. *Elliott* did not, as Benz suggests, fashion a rule that the duty to indemnify requires the insurer to pay the

[9] In *Scottish Guarantee Insurance Co. v. Dwyer*, 19 F.3d 307, 308, 312 (7th Cir. 1994), the insurer refused to provide a defense for the insured in two state court actions and brought the declaratory action in federal court; there is no indication whether the state court actions were stayed pending the final determination of coverage. 19 F.3d at 308–09.

insured's attorney fees, when it loses a contest over coverage.[10] Notably, Benz has provided no authority that reasonably disputing coverage is a breach of the duty to indemnify. Nor are we aware of any such authority. Also, Benz has failed to point us to a provision in her policy, or language in *Elliott*, that requires the insurer to underwrite not only any claims falling within the parameters of the insurance policy, but also any contest regarding whether the claims are actually within the parameters of the policy.

¶ 33. In essence, Benz is arguing that if she had to incur attorney fees to establish coverage, she was denied the benefit of indemnity. How can this be? The benefit of indemnity is to pay for claims "falling within the parameters of the insurance policy." *Elliott*, 169 Wis. 2d at 321. Here, American Family has apparently made a payment to settle the claim against Benz, so she has not been denied the benefit of indemnity.

¶ 34. Benz, joined by *amicus* Wisconsin Academy of Trial Lawyers, makes a related argument that insurance companies should pay the insured's attorney fees when they do not prevail in a coverage contest, because they are better situated to assume, and spread, the risk of contesting coverage. The relative abilities of the parties to assume the risk of the cost of litigation is not a valid reason for extending *Elliott* by permitting fee-shifting for coverage contests. To shift the established allocation of attorney fees to the party who is better able to assume the cost of that litigation is well beyond the limited exception to the American Rule adopted in

---

[10] Benz claims that this would not be an absolute rule, but would depend upon the terms of the policy. However, the rule Benz suggests is tied to a breach of the duty to indemnify, not to a breach of the duty to defend.

*Elliott*.[11] More importantly, such an approach is antithetical to the American Rule, that, regardless of the relative situation of the parties, "parties to litigation are generally responsible for their own attorney fees incurred with respect to the litigation." *Id.* at 323. We acknowledge that there are exceptions to the American Rule, but only where statutes or contracts provide for fee-shifting, or this court has found that special circumstances warrant recognizing an exception. *See, e.g., Elliott*.

¶ 35. Benz's second argument, that the equitable principles in *Elliott* are also present in this case, is not persuasive. In *Elliott*, it was the indirect breach of the duty to defend—by not following the dictates of *Mowry*—which gave rise to the equities compelling an award of attorney's fees. *See Elliott*, 169 Wis. 2d at 318, 322–23. This is not the case here. The equities that Benz relies upon—that she spent at least as much, if not more, litigating coverage, than American Family paid to settle the case—do not compel extending *Elliott*. The equitable principles in *Elliott* related to the duty to defend. *Id.* at 322–32. There is no contention that American Family has breached its duty to defend here, nor is there any argument that American Family's challenge to coverage was unfair or unreasonable, or in bad faith. American Family did not attempt to avoid its duty to defend Benz by refusing to defend Benz, and then, simultaneously, litigating coverage and liability.

---

[11] We indicated in *Elliott*, 169 Wis. 2d at 325 n.3, that the supplemental relief provision of Wis. Stat. § 806.04(8) permitted the court to award attorney fees without fashioning an exception to the American Rule. However, the resulting effect of *Elliott* was to create an exception to the tenet that parties to litigation are responsible for their own attorney fees.

¶ 36. Finally, Benz contends that the attorney fees she incurred to establish coverage were essentially incurred at the request of American Family, and that the provision of her policy which requires American Family to reimburse her for expenses incurred at its request, provides a basis for the attorney fees award. We expressly declined to adopt this approach in *Elliott*, as Benz concedes. 169 Wis. 2d at 319. Instead of relying upon a provision of the insurance contract, we relied upon the supplemental relief provision of the Uniform Declaratory Judgments Act and the insurer's failure to follow *Mowry*.[12] *Id.* at 318, 322–24. The instant case presents even less compelling circumstances than *Elliott* to induce us to adopt an approach based upon a

---

[12] The dissent here also attempts to rely upon the "reasonable expenses" language of the insurance policy, an approach we explicitly rejected in *Elliott*, 169 Wis. 2d at 319. *See* dissenting op. at ¶¶ 46–49. The dissent also claims that the language of the policy is ambiguous and that a reasonable insured would not expect to pay attorney fees to establish coverage. *Id.* The dissent's reliance upon the language of the policy is misplaced. The language in the policy at issue here is substantially the same as the language of the policy in *Elliott*. *Compare* dissenting op. at ¶ 46 *with Elliott*, 169 Wis. 2d at 319–320. Yet, the rationale for the award of attorney fees in *Elliott* was in no way dependent upon any ambiguity in the language of the policy. Moreover, since we did not find that language to be ambiguous in *Elliott*, we will not search for ambiguity here where it does not exist. *See Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 736, 351 N.W.2d 156 (1984). Nonetheless, for this court to conclude that the language of the insurance policy, as a contract, would support an award of attorney fees, solely for establishing coverage, runs afoul of the American Rule, which allows for an award only where the contract so specifies. *Elliott*, 169 Wis. 2d at 323. Here, the insurance policy has no such fee-shifting provision.

provision in the policy now.[13] Unlike the situation in *Elliott*, there was no attempt on the part of American Family to avoid its duty to defend.[14]

## IV

¶ 37. *Elliott* presented circumstances that prompted us to award attorney fees to the insured as a matter of equity. The insurer failed to follow the dictates of *Mowry*, and the insured was forced, therefore, to litigate the coverage issue and defend on liability simultaneously. Here, unlike the situation in *Elliott*, the insurer, American Family, followed the dictates of *Mowry*. American Family sought to have the fairly debatable question of coverage determined before the liability phase of the case proceeded, and obtained a

---

[13] The dissent claims that, by tying the award of attorney fees in *Elliott* to a breach of the duty to defend, we have created a "no-lose situation" for insurance companies. *See* dissenting op. at ¶ 40. This is hardly the case. The insurance company loses not only the amount it must pay to cover the claim if it challenges coverage and fails, the company also loses attorney fees expended in challenging coverage. The dissent also glosses over the real risk facing insurance companies from bad faith. *See Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 691–92, 271 N.W.2d 368 (1978).

[14] Moreover, even though we seemed to cite with approval the reasoning of some extra-jurisdictional decisions in considering the "reasonable expenses incurred" provision of the policy approach (*Elliott*, 169 Wis. 2d at 319), it is unclear whether those cases involved the key circumstance in *Elliott* that prompted us to award fees, namely, the failure of the insurer to request a stay of the liability phase. *See Occidental Fire & Cas. Co. v. Cook*, 435 P.2d 364 (Idaho 1967); *Upland Mut. Ins. v. Noel*, 519 P.2d 737 (Kan. 1974); *Nordby v. Atlantic Mut. Ins. Co.*, 329 N.W.2d 820 (Minn. 1983).

stay of the liability phase. We thus do not have the inequitable circumstances before us here that were before us in *Elliott*. Accordingly, *Elliott* does not support the circuit court's award of attorney fees to Benz. We thus reverse the order for judgment of the circuit court awarding such fees.

*By the Court.*—The order for judgment of the circuit court awarding attorney fees is reversed.

¶ 38. WILLIAM A. BABLITCH, J. *(dissenting)*. Insurance companies have more than enough incentive to deny coverage for claims made against their insured. They are, after all, in the business to make a profit. Unfortunately, the majority opinion provides further incentive for them to refuse coverage in close claims against their insured. In cases not involving bad faith, the insurance company can now deny coverage, and it wins under any scenario; in contrast, the insured loses under any scenario. The majority opinion is not only anti-consumer, it is also bad law. Accordingly, I respectfully dissent.

¶ 39. First, the opinion is anti-consumer. As a matter of public policy, denying insureds recovery of attorney fees in successfully contesting a denial of coverage leads to highly beneficial results for the insurance company and highly inequitable results for insureds.

¶ 40. Under the majority's result, a denial of coverage leads to a no-lose situation for insurance companies in every likely scenario. If the insured does not contest the denial of coverage, the insurance company wins because it pays nothing. If the insured contests, but loses, the insurance company wins again because it pays nothing. Finally, if the insured contests

and wins, the insurance company wins yet again because it is forced to pay out no more than what it would have paid under the claim initially—an amount, in retrospect, they were obligated to pay under the policy.

¶ 41. In contrast, the insured is faced with a no-win situation from a denial of coverage under any likely scenario. If the insured does not contest the denial, the insured loses because it has to pay the value of the claim. If the insured contests, but loses, the insured loses because it must then pay both the value of the claim and the attorney fees paid in contesting the denial of coverage. Lastly, if the insured contests and wins, the insured also loses because the insured will have to pay attorney fees to get the coverage that in retrospect it had paid for. This was exactly the outcome in Benz's case. She incurred almost $7,000 in attorney fees in her declaratory judgment action against American Family that, in retrospect, she had paid for.

¶ 42. In sum, it is a win-win-win for the insurance company and a lose-lose-lose for the insured. Insurance companies will be motivated to deny all claims in close cases involving coverage, knowing that under the worst case scenario they stand to lose nothing but their attorney costs, if any, in defending their denial. On the other hand, the denial of coverage will require insureds to either pursue the costly alternative of contesting coverage or to pay the claim themselves because it will cost less than undertaking litigation against their own insurance company.

¶ 43. The above is particularly true in cases involving claims that involve an amount closely approaching the amount that it would cost the insured in attorney fees to contest the denial. It would be foolish, except perhaps as a matter of principle, for an

insured to contest a denial that would end up costing the insured more in attorney fees than the claim was worth. And it is undeniable that claims managers will be aware of that fact as well.

¶ 44. As a further matter of public policy, denying attorney fees to insureds fails to recognize that an insurance policy represents a unique type of legally enforceable contract. *See Elliott v. Donahue*, 169 Wis. 2d 310, 320, 485 N.W.2d 403 (1992). Its unique nature is illustrated when an insurance company refuses to perform on the contract. When this occurs, the insured cannot merely turn to another supplier of insurance for coverage. The insured is locked into this relationship with his or her insurance company and must seek a declaratory judgment to obtain coverage, despite the cost. In light of this fact, it is fair to assign the costs of refusing to perform on the contract to the insurance company when it is later determined that coverage exists under the policy.

¶ 45. In addition to the bad public policy that results from the majority opinion, it is also bad law: it ignores the ambiguities in the insurance contract; it fails to honor the reasonable expectations of the insured; and it errs in its interpretation of relevant case law.

¶ 46. To begin, I find that ambiguity exists in the insurance contract on whether Benz is entitled to such attorney fees. In reaching this result, an examination must first be undertaken of American Family's duties and obligations under the terms of its policy issued to Benz. The policy reveals that, in exchange for premiums paid by Benz, American Family assumed the contractual duties of indemnification and defense for claims described in the policy. Specifically, with

684

respect to its duty to defend, the policy defines the limits of this duty as follows:

*Defense Provision.*

If a suit is brought against any *insured* for damages because of *bodily injury* or *property damage* caused by an *occurrence* to which this policy applies, *we* will provide a defense at *our* expense by counsel of *our* choice. *We* will defend any suit or settle any claim for damages payable under this policy as *we* think proper.

Associated with this duty to defend, the policy provides that American Family will cover certain expenses for claims and suits that it is "obligated to defend," stating:

*Claim and Defense Expenses. We* will pay the expenses described below for a claim or suit *we* are obligated to defend under the Personal Liability Coverage:

a. all expenses *we* incur and costs taxed against any *insured*;

. . . .

c. reasonable expenses (other than loss of earnings) any *insured* incurs at *our* request; ˙

We have noted that an insurer's duty to defend is broad, extending beyond its duty of indemnification. *Elliott*, 169 Wis. 2d at 320–21.

¶ 47. The question then becomes whether the policy language provides coverage for attorney fees incurred by the insured when the insured successfully contests the insurance company's denial of coverage. This question requires an interpretation of the insurance contract.

685

¶ 48. Any language in the policy must be interpreted according to "what a reasonable person in the position of an insured would have understood the words to mean." *Elliott*, 169 Wis. 2d at 322. "Words or phrases in a contract are ambiguous when they are fairly susceptible to more than one construction." *Kremers-Urban Co. v. Am. Employers Ins.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156 (1984). Any ambiguity in the insurance contract must be construed directly against the insurance company. *Leatherman v. Am. Family Mut. Ins. Co.*, 52 Wis. 2d 644, 649–50, 190 N.W.2d 904 (1971).

¶ 49. An interpretation of the policy language leads to one conclusion: it is unclear as to whether the policy requires payment for such attorney fees. A reasonable insured could understand the policy language to mean that he or she will be made whole if there is coverage. *See Elliott*, 169 Wis. 2d at 318–19. I recognize, however, that the language may be susceptible to other reasonable interpretations. In light of this ambiguity, the insurance policy is still appropriately construed against American Family, and accordingly, Benz must be paid her attorney fees under the policy.

¶ 50. This interpretation is also consistent with the expectations of an insured under the contract. "The public policy purpose of honoring the reasonable expectations of the insured is applied when the language of an insurance contract is interpreted and construed." *Smith v. Gen. Cas. Ins. Co.*, 2000 WI 127, ¶ 27, 239 Wis. 2d 646, 619 N.W.2d 882. An insured who is entitled to coverage under a policy expects that the insurance company will provide coverage in full, including costs for any litigation which leads to the determination that coverage exists under the policy. Insureds do not expect that, if their policy provides coverage, they will receive

such coverage less any attorney fees required to establish coverage. In particular, in this case, Benz, as a reasonable insured, could not have expected to incur almost $7,000 in attorney fees in order to receive coverage that she was entitled to in the first place.

¶ 51. Finally, the majority errs in their interpretation of *Elliott*. We made two separate holdings in *Elliott* on whether the insured in that case was entitled to attorney fees after successfully defending coverage. First, we determined that the insurer had not breached its duty to defend by denying coverage to the insured because the issue of coverage was fairly debatable. Therefore, the insured could not recover attorney fees based on any such breach. We concluded, however, that the insurer did breach its duty to defend by failing to follow the mandate of *Mowry v. Badger State Mut. Cas. Co.*, 129 Wis. 2d 496, 385 N.W.2d 171 (1986), which required the insurer to stay any proceedings on liability until coverage was resolved. In light of this breach, we held that the insurer was liable for the attorney fees incurred by the insured in defending the issue of liability.

¶ 52. Our second determination was that, pursuant to Wis. Stat. § 806.04(8), the insured was entitled to attorney fees incurred in successfully establishing coverage. This decision, however, in no way related back, as the majority states, to the insurer's breach of its duty to defend. Instead, we determined that under the principles of equity—none of which related to the defendant's breach—an insured may recover attorney fees under § 806.04(8) when successfully defending coverage. Indeed, although our holding in *Elliott* was limited in the sense that we granted recovery under § 806.04(8) instead of finding an exception to the American Rule, we in no way limited our award of attorney

fees for defending coverage based on the insured's breach of its duty to defend. In turn, under a plain reading, *Elliott* could apply in this case to allow Benz to recover her attorney fees.

¶ 53. On the whole, the rule laid down by the majority permits insurance companies to do by indirection that which it cannot do directly. *See Elliott*, 169 Wis. 2d at 323. An insurance company cannot directly refuse to follow its contractual duty to defend. However, under the majority's conclusion, insurance companies can now achieve this same result indirectly, by denying coverage and effectively leaving some insureds without coverage because the insureds cannot afford to contest it, especially in close cases. In turn, the same result is achieved, that is, a refusal to follow their contractual duty to defend. Because the majority's opinion leads to this undesirable outcome, I respectfully dissent.

¶ 54. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.