Charles R. PATRICK, Plaintiff,

v.

HEAD OF the LAKES COOPERATIVE ELECTRIC ASSOCIATION, Defendant-Appellant and Cross-Respondent,

FEDERATED RURAL ELECTRIC INSURANCE COMPANY, Defendant-Respondent and Cross-Appellant.

Court of Appeals

*No. 79-1452. Submitted on briefs April 8, 1980.—*
*Decided June 24, 1980.*
(Also reported in 295 N.W.2d 205.)

For the defendant-appellant and cross-respondent the cause was submitted on the briefs of *Jeffrey A. Lee, David M. Weiby,* and *Davis, Witkin, Weiby & Maki, S.C.,* of Superior.

For the defendant-respondent and cross-appellant the cause was submitted on the briefs of *James L. Cirilli* and *Borg, McGill, Peterson, McDonald & Cirilli* of Superior.

Before Donlin, P.J., Foley, J., and Dean, J.

FOLEY, J.   Federated Rural Electric Insurance Company refused to defend Head of the Lakes Cooperative Electric Association, its insured, in an action brought by Charles Patrick for damages resulting from the Cooperative's intentional cutting of Patrick's trees. Some or all of the trees were within an unrecorded easement held by the Cooperative over Patrick's property. The trial court ruled that Federated had a duty to defend and awarded the Cooperative defense fees and costs of $2,-545.67. Both parties have appealed the judgment, Federated claiming that it had no duty to defend and the Cooperative that it is actually entitled to attorney's fees

and costs of $6,219.95. We agree with the trial court that Federated had a duty to defend. As to the amount of the judgment, however, we have the obligation to make an independent review of the attorney's fees and costs. Based on that review, we modify the judgment to award the Cooperative $5,122.95, their fees and costs for defending the Patrick action, plus their taxable costs on their cross-complaint against Federated.

Federated claims that it did not have a duty to defend because: (1) The act of cutting trees was an intentional act not covered by the policy; and (2) since the trees that were cut were on a Cooperative easement, they were in the physical control of the Cooperative and excluded from coverage. The insurance policy provided that the claimed damage, to be covered, must result from an "occurrence." An "occurrence" is defined as:

An accident occurring within the policy period, including continuous or reported exposure to conditions, which results in Personal Injury or Property Damage neither expected or intended from the standpoint of an Insured.

The policy excluded:

[D]amage to property owned, used or otherwise in the physical control of an insured . . . .

The construction of an insurance policy is a question of law. *RTE Corporation v. Maryland Casualty Company,* 74 Wis.2d 614, 247 N.W.2d 171 (1976). We independently determine questions of law without deference to the conclusions reached by the trial court. *American Mutual Liability Insurance Company v. Fisher,* 58 Wis.2d 299, 206 N.W.2d 152 (1973). Our objective in construing an insurance policy is to ascertain and carry out the intention of the parties. *Home Mutual Insurance Company v. Insurance Company of North America,* 20 Wis.2d 48, 121 N.W.2d 275 (1963).

When ambiguous, an exclusionary clause in an insurance contract should be strictly construed against the insurer. *Meiser v. Aetna Casualty and Surety Co.*, 8 Wis.2d 233, 98 N.W.2d 919 (1959). The test of coverage is not what the insurer intended to cover, but what a reasonable person in the position of the insured would have understood to be covered. *Ehlers v. Colonial Penn Insurance Company*, 81 Wis.2d 64, 259 N.W.2d 718 (1977). The words used in an insurance contract should be given their common everyday meaning, *Schmidt v. Luchterhand*, 62 Wis.2d 125, 214 N.W.2d 393 (1974), and should be interpreted reasonably so as to avoid absurd results. *Olguin v. Allstate Insurance Company*, 71 Wis.2d 160, 237 N.W.2d 694 (1976). Finally, there is a public policy in Wisconsin against the avoidance of coverage by an insurer, and the reasonable expectations of coverage by an insured should be honored. *Handal v. American Farmers Mutual Casualty Company*, 79 Wis.2d 67, 255 N.W.2d 903 (1977).

Federated contends that "occurrence" and "accident" are synonymous terms. This construction defeats the purpose of using the term "occurrence." It also does not take into consideration the portion of the policy definition of occurrence that requires consideration of whether the result of the accident was "expected or intended from the standpoint of the insured."

The term "occurrence" originally came into use in insurance policies because a restrictive construction of the term "accident" proved unsatisfactory to the insured, the public, and the courts. The purpose of using "occurrence" rather than "accident" was to expand coverage. 7A Appleman, *Insurance Law and Practice* §4492 (1979). Its use permits consideration of the state of mind of the actor as it relates to the resultant damage, rather than only as it relates to causation. 7A Apple-

man, *supra* §4492.02. Its use affords coverage for an intended act and an intended result if they cause damage unintended from the standpoint of the insured.

In this case, the cutting of trees and resulting damage to the trees was intended by the Cooperative. Any unauthorized cutting, which is the basis for Patrick's action, was unintended. The employees of the Cooperative intended to trim trees that were interfering with transmission lines. The lines ran over Patrick's property, but were on an unrecorded easement held by the Cooperative. The easement authorized the Cooperative to trim trees that interfered with its lines. The employees of the Cooperative did not intend to trim more than was necessary to reasonably maintain service, and did not intend to cut or trim trees located outside of the Cooperative's easement. As a cause of action existed only for damages due to unauthorized trimming and cutting, any damage was in fact unintended. Under these circumstances, Patrick's action claims an occurrence covered by the policy.

Federated's second argument is that since the Cooperative cut trees on its own easement, the property was under the Cooperative's "physical control" and is excluded from coverage. The Wisconsin Supreme Court has held that "control" is an ambiguous term and must be strictly construed against the insurer. *Meiser, supra.* In strictly construing the term here, in light of its purpose in the policy and honoring the reasonable expectations of coverage of the Cooperative, we conclude that the Cooperative did not have physical control over the trees.

The purpose of the exclusion of property over which the insured has physical control is to avoid coverage of property that should be covered separately under a different type of insurance that contemplates a different

type of risk. 7A Appleman, *supra* §4493.03. In this case, if coverage were excluded, we know of no other type of insurance the Cooperative should have been required by Federated to purchase to cover this risk.

Also, the ambiguity inherent in the term "control" becomes patently apparent when the interests of the respective parties are considered. Patrick owned the property. He had the right to cut the trees and regardless of who cut them, they were his. The Cooperative, as holder of the easement, had no possessory interest in the trees. 25 Am. Jur. 2d *Easements & Licenses* §72, *et seq.* (1966). Its interest was limited and contingent, existing only to the extent that Patrick's trees interfered with its transmission lines. The Cooperative could reasonably expect that this limited and contingent interest would not exclude coverage. This interest does not put the trees in the control of the Cooperative as we strictly construe the term.

The Cooperative argues that it is entitled to $6,219.95 in actual attorney's fees and defense costs incurred both for the defense of the Patrick action and for its cross-claim against Federated. The trial court awarded $2,500 attorney's fees and a portion of the defense costs. We conclude that the Cooperative is entitled to the full amount of its defense expenses totaling $4,286.25 attorney's fees, $570.81 for lost employee time and expenses, and $265.89 taxable costs. The Cooperative is, however, only entitled to statutory fees and costs on its cross-claim, which was submitted to the court following the successful conclusion of the Cooperative's defense of the Patrick action.

The cross-claim is akin to any other legal action and, except in limited circumstances not applicable here, actual attorney's fees are not recoverable. In this case, the

cross-claim was heard in a totally separate hearing after the conclusion of the trial. The fees incurred by the Cooperative in pursuing the cross-claim are readily separable from the fees incurred in defending against Patrick's claim. Federated only had a duty under the insurance contract to provide a defense against that claim. The Cooperative action against Federated was on that contract and for the fees it incurred in providing its own defense. When a party sues on a contract, that party is generally not entitled to actual attorney's fees. The Cooperative, therefore, although entitled to actual attorney's fees for the defense of the Patrick claim, is only entitled to statutory fees on its cross-claim.

On appeal, we review attorney's fees independently. *State v. Sidney,* 66 Wis.2d 602, 225 N.W.2d 438 (1975). Factors to be considered in awarding attorney's fees are: the amount and character of the services; the labor time, and trouble involved; the character or importance of the litigation; the amount of money or value of property involved; the professional skill necessary; and the standing of the attorney in the profession. *Herro, McAndrews & Porter, S.C. v. Gerhardt,* 62 Wis.2d 179, 214 N.W.2d 401 (1974).[1] When an insurer refuses to defend, it does so at its peril. It loses the right to control the defense or the settlement of the action. The insured then has the right to defend in whatever way it sees fit. As long as this defense is reasonable and coverage is

[1] Furthermore, we agree with the statement made by Reserve Judge Harry Larsen, who testified as an expert witness at the hearing on the reasonableness of the attorney's fees. Judge Larsen said:

I happen to be of the mind that a lawyer who tries a case of this kind has the absolute duty to not overlook any detail; that he should be extremely diligent in his preparation of the case; that he should be in the position to meet every possible eventuality; that he should leave no stone unturned; that he should guard against everything . . . .

found, the insurer must pay for the defense. 7C Appleman, *supra* §§4681, 4682, 4683.

We have reviewed the statement submitted by the Cooperative's attorney with these factors in mind and conclude that both the time spent and the amount charged for the defense of the Patrick action were reasonable. The defense was fairly complex involving issues of real property law, tort law, and insurance law. Counsel billed ninety-seven hours at $40 to $45 per hour. Although the total bill might be considered disproportionate in relation to the claimed damages, a successful defense was important to the Cooperative because it held over 1,000 unrecorded easements similar to the one involved here. No doubt, had Federated defended, it could have settled for less than it is now obligated to pay. Since it decided not to defend, it cannot complain that the Cooperative made the decision to vigorously defend.

The Cooperative also claims that it is entitled to recover $570.81 of the $1,536.83 in other expenses it incurred as a result of the litigation. The insurance policy provides that Federated will pay "[t]he policyholder's reasonable expenses in assisting Federated in the defense of any claim, including an employee's loss of earnings up to $50 per day."

The trial court ruled that because no employee lost wages, the Cooperative could not recover. On the basis of this construction of the policy, only if the Cooperative had withheld $50 per day from each employee whose time was spent in court would Federated have to pay. This would be an absurd result and should be avoided. *Olguin, supra*. The question is not whether an employee lost wages, but whether the Cooperative sustained a loss because it had to pay wages to employees for time spent in the litigation as opposed to working at Cooperative business. It did, and it is therefore entitled to the claimed $570.81.

*By the Court.*—Judgment modified and as modified, affirmed with directions to additionally allow taxation of costs on the cross-claim.