**THURNER HEAT TREATING CORPORATION a Wisconsin corporation, Scott P. Thurner, Personal Representative of the Estate of Robert E. Thurner, Deceased, Plaintiffs,**

v.

**MAYFAIR FORD, INCORPORATED, a Delaware corporation, Ford Motor Company, a Delaware corporation, Defendants.**

No. 83–C–0573.

United States District Court, E.D. Wisconsin.

April 1, 1987.

E. Campion Kersten, Kersten & McKinnon, Milwaukee, Wis., for plaintiffs.

Robert H. Storm, Prieve, Meyer & Nestingen, Milwaukee, Wis., for Mayfair Ford, Inc.

John A. Busch, Michael, Best & Friedrich, Milwaukee, Wis., for Ford Motor Co.

## ORDER AND JUDGMENT

WARREN, Chief Judge.

The Court withheld entering *Judgment* in the above-entitled matter following the jury's return of its verdict pending the parties' further arguments concerning plaintiffs' request for attorneys fees and interest on the damages. The parties have briefed and orally argued their respective positions. By today's ruling, the Court partially resolves the pending post-trial issues and enters the appropriate *Judgment.* Finally, the Court orders further briefing on the issue of the appropriate attorneys fee award.

### I.

Plaintiffs own two parcels of real estate located at 1825 and 1901 North Mayfair Road, Wauwatosa, Wisconsin. These parcels contain buildings conducive for use by automobile and recreational vehicle dealerships.

In 1973, Jack White, Inc., which subsequently changed its name to "Russ Darrow Ford, Inc.", executed a fifteen-year lease on both of these parcels. In April of 1980, Russ Darrow Ford, Inc. approached plaintiffs and requested that it be allowed to assign its obligations under the two leases to defendant Mayfair Ford, Inc. ("Mayfair Ford"). Between April and August of 1980, plaintiffs negotiated with Mayfair Ford and defendant Ford Motor Company ("Ford") regarding this proposal. These negotiations ultimately proved fruitful resulting in Mayfair Ford being assigned the subject leases on or about July 31, 1980.

Mayfair Ford was organized under the "Ford Dealer Development Program" pursuant to which its voting preferred stock was owned 100% by Ford. Ford sought to secure a dealer/operator who would acquire Mayfair Ford's common stock and who would eventually acquire ownership and control of Mayfair Ford through a buyout generated from anticipated dealership profits. However, Ford was unable to secure a dealer/operator for Mayfair Ford and, consequently, Mayfair Ford never operated as a dealership. Mayfair Ford paid rent under the two leases through April of 1982 when it abandoned the premises.

Plaintiffs commenced this lawsuit seeking recovery for Mayfair Ford's breach of the leases and further alleged a fraud cause of action against the defendants. Moreover, plaintiffs' complaint alleged that Ford should be held liable for the acts of Mayfair Ford pursuant to an "alter ego" theory.

By *Decision And Order* dated April 29, 1986, the Court granted summary judgment in defendants' favor as to the fraud cause of action and denied summary judgment as to the remaining causes of action. A jury trial was commenced on November 17, 1986. At trial, plaintiffs voluntarily withdrew their claim for damages for Mayfair Ford's breach of the lease on the 1901 Mayfair Road Building ("the 1901 Building").

Following a six-day trial, the jury returned a special verdict finding (1) that the separate corporate status of the defendants should not be disregarded, (2) that $74,-550.00 would fairly and reasonably compensate the plaintiffs for the breach of the lease on the 1825 North Mayfair Road Building ("the 1825 Building") with respect to loss of rental income, and (3) that $80,-793.00 would fairly and reasonably compensate the plaintiffs for the breach of the lease on the 1825 Building with respect to expenses for repairs, replacements, maintenance and other expenses.

## II.

The parties agree that the jury's award of damages for Mayfair Ford's breach of the 1825 Building's lease entitles plaintiffs to recover interest on these damages pursuant to the applicable lease provisions. The parties further agree that interest on the $74,550.00 loss of rental income was $34,516.65 through January 9, 1987, with a per diem rate of $24.85 for each day thereafter until today's date. As to the $80,-793.00 of damages for repairs, replacement, maintenance and other expenses, the parties agree that interest on this amount through January 9, 1987, was $22,864.41, with a per diem rate of $26.93 for each day thereafter until today's date.

Plaintiffs contend that the applicable lease provisions entitle them to recover all of their attorneys fees incurred in this action. Defendants dispute this contention.

Paragraph 17(c) of the lease provides with respect to attorney fees:

In the event of any breach by Lessee of any of the provisions of this lease, Lessor may immediately or at any time thereafter, without notice, cure such breach for the account and at the expense of Lessee. If Lessor at any time, by reason of such breach, is compelled to pay, or elects to pay, any sum of money or do any act which will require the payments of any sum of money, or incurs any expense, including reasonable attorneys' fees, in instituting or prosecuting any action or proceedings to enforce Lessor's rights hereunder, the cost thereof shall be paid by Lessee to Lessor upon demand.

In addition, paragraph 19 of the lease provides:

*Enforcement Costs:* The Lessee shall pay all reasonable costs, attorney's fees and expenses that may be incurred by the Lessor in enforcing the provisions of this lease.

Plaintiffs' action, when commenced, raised four issues: fraud, alter ego, damages for the breach of the 1825 Building's lease and damages for the breach of the 1901 Building's lease. Prior to trial, the Court disposed of plaintiffs' fraud claim through summary judgment. At trial, there was no dispute that Mayfair Ford had breached the 1825 Building's lease. The disputed issues were limited to plaintiffs' damages for Mayfair Ford's breach of the leases on the 1825 Building and the 1901 North Mayfair Road Building and whether Ford was Mayfair Ford's "alter ego." Plaintiffs voluntarily withdrew their cause of action as to the 1901 Building's lease midway through trial. Plaintiffs prevailed only on the issue regarding the damages for the breach of the 1825 Building's lease.

The parties offer diverse views on the extent to which plaintiffs may recover attorneys fees pursuant to the above-quoted lease provisions. Plaintiffs contend that they are entitled to recover all of their attorneys fees incurred in this litigation, arguing that they brought this action to enforce their rights under the subject leases and they ultimately prevailed to some extent on the contested issues. Ford argues that plaintiffs should not recover any of their attorneys fees, arguing essentially that the primary issue at trial was the "alter ego" issue as to which plaintiffs failed to prevail. Ford further argues that none of the work represented by the requested fees resulted in a recovery from Mayfair Ford greater than that available to plaintiffs prior to trial. Mayfair Ford contends that plaintiffs should only be awarded those attorneys fees incurred in recovering damages for Mayfair Ford's breach of the 1825 Building's lease.

The parties identify no case law precisely on point, although Mayfair Ford cites *Patrick v. Head of Lakes Cooperative Elec. Ass'n*, 98 Wis.2d 66, 295 N.W.2d 205 (Wis. Ct.App.1980), in support of its position. The *Patrick* case stands for the proposition that where the parties contract for insurance coverage which includes a duty to defend and the insurance company fails to fulfill its obligation to defend, the insurance company must reimburse the insured for its attorneys fees incurred in defending itself. However, the insurance company's contractual duty to defend does not require the reimbursement of the insured's attorneys fees incurred in prosecuting the secondary action against the insurance company. As such, *Patrick* supplies only limited aid in resolving the issue presently before the Court.

Here, the Court must determine whether the subject lease's attorneys fees provision applies to plaintiffs' recovery in this case and, if so, to what extent plaintiffs may recover from Mayfair Ford their attorneys fees incurred. It is clear that the jury's award of $155,343.00 in damages was pursuant to plaintiffs' efforts to enforce their rights under the 1825 Building's lease. As such, the above-quoted lease provisions allow for plaintiffs' recovery of their attorneys fees incurred in prosecuting this claim. This damages amount exceeds the defendants' pre-litigation offer of $39,-562.93. Regardless if Mayfair Ford has sufficient assets to satisfy these damages, plaintiffs are entitled to seek recovery of this amount for the breach.

If this had been the only issue in this case, the plaintiffs would certainly have been entitled to a complete recovery of all of their attorneys fees since the case would have entailed only plaintiffs' successful enforcement of their rights under the lease. However, other issues existed upon which plaintiffs did not prevail. The Court must determine whether plaintiffs' lack of success on these issues precludes, diminishes or does not affect their entitlement to recover attorneys fees for prosecuting this action.

In resolving this issue, the Court finds guidance in civil rights litigation where the plaintiff has prevailed on some, but not all, issues and seeks an award of attorneys fees under 42 U.S.C. § 1988. The United States Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) articulated various requirements pertinent to making such an award. One requirement stated in *Hensley* is that if the plaintiff succeeds on only some of his claims for relief, he may not recover fees for time expended on "distinctly different claims for relief that are based on different facts and legal theories" than the successful claims. 461 U.S. at 434–40, 103 S.Ct. at 1940. The Seventh Circuit discussed and interpreted *Hensley* in *Mary Beth G. v. City of Chicago*, 723 F.2d 1263 (7th Cir.1983):

> Because *Hensley* only disapproves of awarding attorney's fees for time spent on unsuccessful claims for relief that are *unrelated* to successful claims, however, time spent on unsuccessful, *related* claims may be compensated. *Hensley* recognizes that "there is no certain method of determining when claims are 'related' or 'unrelated.'" The case instructs, however, that the starting point for separating an unrelated, unsuccessful claim from a related, unsuccessful claim is to determine whether a particular unsuccessful claim shares a "common core of facts" with the successful claim or is based on a "related legal theory." We believe a useful tool for making this determination is to focus on whether the claims seek relief for essentially the same course of conduct. Under this analysis, an unsuccessful claim will be unrelated to a successful claim when the relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised.

723 F.2d at 1279 [citations omitted] [emphasis in original].

By employing the analogous *Hensley* and *Mary Beth G.* reasoning in the present case, the Court determines whether the

plaintiffs' unsuccessful claims were related or unrelated to their successful claim to enforce their rights under the 1825 Building's lease.

First, plaintiffs' claim to enforce its rights under the 1901 Building's lease, which it withdrew during trial, was unrelated to plaintiffs' claim to enforce its rights under the 1825 Building's lease. The leases were separate contracts containing separate rights and obligations, and involving separate real estate. As such, plaintiffs' claims to enforce its rights under each lease were likewise separate and unrelated.

Second, plaintiffs' fraud claim was unrelated to plaintiffs' claim to enforce its rights under the 1825 Building's lease. The fraud claim alleged a course of conduct concerning Ford's alleged fraudulent failure to maintain Mayfair Ford's capitalization. This alleged course of conduct was "entirely distinct and separate from the course of conduct [giving rise] to the injury on which the relief granted is premised", *Mary Beth G.*, 723 F.2d at 1279, namely the damages flowing from Mayfair Ford's breach of the 1825 Building's lease.

Finally, the plaintiffs' "alter ego" claim was unrelated to its successful claim. The "alter ego" claim was an attempt to establish an avenue for recovery of damages resulting from Mayfair Ford's breach of the lease; it was not an effort to enforce a right that plaintiffs asserted to possess under the lease. Moreover, plaintiffs alleged different courses of conduct pursuant to each claim. In the "alter ego" claim plaintiffs essentially alleged that Ford, by its control and dominion over Mayfair Ford, was Mayfair Ford's alter ego. In the breach of lease claim, plaintiffs alleged that it suffered damages because of loss of rent and other expenses resulting from Mayfair Ford's breach of the 1825 Building's lease.

The Court concludes that plaintiffs may recover their attorneys fees in this litigation incurred in enforcing their rights under the 1825 Building's lease. That is, those fees incurred pursuant to plaintiffs' efforts in this action to recover damages for loss of rental income and expenses by reason of Mayfair Ford's breach of the lease may be recovered. Plaintiffs cannot recover attorneys fees incurred in prosecuting their other claims in this action. The Court recognizes that segregating those fees pertaining to plaintiffs' successful claim from those fees pertaining to their unsuccessful claims will be difficult and imprecise because the preparation and presentation of plaintiffs' case necessarily involved counsel's efforts directed towards all claims, oftentimes in an overlapping fashion. However, as previously described, plaintiffs' entitlement to recover attorneys fees under the lease is limited and the Court must make its best determination of those fees which may be recovered. To aid the Court in performing its discretionary task of setting the amount of attorneys fees which may be recovered, plaintiffs shall submit their position *within 20 days of today's Order* regarding the estimated reasonable number of hours expended in prosecuting the successful claim and the reasonable fee rate applicable to such prosecution. Defendants may submit any response to plaintiffs' position *within 10 days* following plaintiffs' submission of their position. A similar segregation analysis is not required for making an award of costs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure. A party need not prevail on all issues to justify a full award of costs. Rather, if a prevailing party obtains judgment on only a fraction of the claims advanced, that party is entitled to an award of costs. *United States v. Mitchell*, 580 F.2d 789 (5th Cir. 1978); *Lodges 743 and 1746, Etc. v. United Aircraft*, 534 F.2d 422 (2d Cir.1975). Accordingly, plaintiffs may recover their costs from Mayfair Ford and Ford may recover its costs from the plaintiffs.

IT IS THEREFORE ORDERED AND ADJUDGED that the plaintiffs may recover damages from the defendant Mayfair Ford, Inc. for the breach of the lease on the 1825 North Mayfair Road Building of $74,-550.00 for loss of rental income plus $36,-554.35 in interest [$34,516.65 + (82 days × $24.85)] and $80,793.00 for expenses, re-

pairs, replacements, maintenance and other expenses plus $25,072.67 in interest [$22,-864.41 + (82 days × $26.93)], for a total recovery of $216,970.02. Pursuant to the applicable lease provisions, plaintiffs may recover from Mayfair Ford their attorneys fees incurred in prosecuting their claim for damages for Mayfair Ford's breach of the 1825 Building's lease. Finally, the defendants' separate corporate status shall not be disregarded. Plaintiffs may recover their costs from Mayfair Ford. Ford Motor Co. may recover its costs from plaintiffs.