James F. Accola and Suzanne Pierce Accola,
Plaintiffs-Appellants,

v.

Fontana Builders, Inc., Defendant,

Westfield Insurance Company,
Defendant-Respondent.†

Court of Appeals

*No. 2009AP2810. Submitted on briefs June 8, 2010.*
*—Decided September 22, 2010.*

2010 WI App 143

(Also reported in 792 N.W.2d 635.)

† Petition for review denied 1-11-11.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Chris J. Trebatoski* of *Weiss Berzowski Brady LLP*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Michael P. Crooks* of *Peterson, Johnson and Murray, S.C.*, Madison.

Before Brown, C.J., Neubauer, P.J., and Anderson, J.

¶ 1. BROWN, C.J. James and Suzanne Accola are suing Fontana Builders, Inc., along with its liability insurer, Westfield Insurance Company, to recover damages for their personal property that burned while they were asleep in their soon-to-be home. Westfield claims that because the house was still owned by Fontana—the general contractor working to put finishing touches on the home at the time of the fire—the house *and its contents* were excluded from coverage. Specifically, Westfield contends that the contents of the house are excluded as property in the "care, custody, or control" of Fontana. The Accolas argue that their personal property was neither owned by nor in the "care, custody, or control" of Fontana—and was therefore covered. The trial court agreed with Westfield, and granted summary judgment in its favor, dismissing it from the lawsuit. We disagree, and reverse.

## FACTS

¶ 2. The relevant facts of this case are complicated, but undisputed. The Accolas were sleeping in a house with their children when a fire broke out, destroying both the house and its contents. At the time of the fire, the house was owned by Fontana, but legally occupied by the Accolas under a thirty-day temporary occupancy permit. Interestingly, James Accola happens to be both

owner and president of Fontana.[1] The fire was allegedly caused by some dirty (and apparently flammable) rags left behind by a Fontana employee.

¶ 3. After the fire, the Accolas filed a negligence claim against Fontana and Westfield, Fontana's liability insurer. They acknowledged that damage to the house itself was not covered because the liability policy excludes coverage for property owned by the insured (here, Fontana). However, they claim that the personal property they moved into the house *was* covered because it was not owned by Fontana and was not in Fontana's care, custody, or control.

¶ 4. Westfield filed for summary judgment, claiming that the Accolas' personal property was excluded from their policy by the "care, custody, or control" exclusion.[2] It claims that this exclusion is in place to avoid precisely this scenario, where an insured allows valuable property to be stored on its property while it is

---

[1] While the Accolas' relationship to Fontana is certainly interesting to contemplate, we do not find it particularly relevant to the questions raised by the parties. While Westfield certainly asserted that the Accolas and Fontana were one and the same in terms of Fontana's "care, custody, or control" of the Accolas' personal property, Westfield never provided the circuit court or this court with any authority that its policy should be read to exclude property damage caused by the insured and incurred by an officer of the insured. Similarly, an argument was never made as to whether the Accolas' personal property is excluded from coverage because James Accola was the de facto insured. Because neither the argument by Westfield nor the record are developed in a way to allow us to consider this hybrid "piercing the corporate veil" issue, we are bound to treat the Accolas and Fontana as separate entities for the purpose of determining ownership and coverage.

[2] The "care, custody, or control" exclusion is at the center of this case. It reads:

2. **Exclusions**

still doing work on it. Westfield also claims that James Accola's status as owner of Fontana strengthens its argument that his personal property should be excluded because it was under supervision "24 hours a day" by a Fontana employee—Accola himself. The trial court granted summary judgment to Westfield and dismissed it from the lawsuit. The Accolas appeal.

## DISCUSSION

¶ 5. We review summary judgment de novo. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 317, 401 N.W.2d 816 (1987). We use the same methodology as the trial court, but we owe it no deference. *Id.* at 315–17; *Silverton Enters., Inc. v. General Cas. Co. of Wis.*, 143 Wis. 2d 661, 669, 422 N.W.2d 154 (Ct. App. 1988). Summary judgment is appropriate when there are no genuine issues of material fact and a party is entitled to a judgment as a matter of law. *Green Spring Farms*, 136 Wis. 2d at 315; Wis. Stat. § 802.08(2) (2007–08).

¶ 6. The question that is central to this case is whether the Accolas' personal property is excluded by the "care, custody, or control" clause of Westfield's policy with Fontana. The parties agree as to all of the relevant facts: the Accolas owned personal property inside the house, but Fontana still owned the house itself; the

This insurance does not apply to:

. . . .

**j. Damage To Property**

"Property damage" to:

. . . .

(4) Personal property in the care, custody or control of the insured.

45

Accolas had permission to move themselves and their belongings into the house; and James Accola was (and is) president and owner of Fontana, but he was asleep with his family inside when the fire occurred. Thus, the only remaining question is one of law—how do these undisputed facts fit with the law regarding the "care, custody, or control" exclusion? Both parties were able to provide us with Wisconsin case law addressing this type of clause. Predictably, they disagree as to how the facts apply.

¶ 7. We begin with some basic insurance law principles. Insurance companies, of course, may limit coverage, but they must do so explicitly and with clear language. *Meiser v. Aetna Cas. & Sur. Co.*, 8 Wis. 2d 233, 238, 98 N.W.2d 919 (1959). If an exclusion clause is ambiguous, it must be construed against the insurer. *Id.* The purpose of the strict construction is to protect the reasonable expectations of the insured. *See Patrick v. Head of the Lakes Coop. Elec. Ass'n*, 98 Wis. 2d 66, 69, 295 N.W.2d 205 (Ct. App. 1980).

¶ 8. Our supreme court has already found the "care, custody, or control" clause to be ambiguous. *Meiser*, 8 Wis. 2d at 238. We even have a test that we use to determine whether property is covered by the "care, custody, or control" clause of an insurance contract. *See id.* at 236, 238; *Silverton*, 143 Wis. 2d at 670–71. Property is in the care, custody, or control of the insured if it is "under the supervision of the insured" *and* it is a necessary element of the work involved. *Silverton*, 143 Wis. 2d at 670–71; *see also Meiser*, 8 Wis. 2d at 236, 238. We agree with Westfield that the personal property was under the general supervision of Fontana as general contractor. But we cannot see how

the Accolas' personal property was *necessary* to the work involved in finishing—or, for that matter, building —their house.

¶ 9. We know of two Wisconsin cases that discuss the "care, custody, or control" test in depth, and both confirm our reasoning. In *Meiser*, the insured was a subcontractor whose job was to plaster walls and ceilings in a house. *Meiser*, 8 Wis. 2d at 239. The general contractor asked him to clean some stray plaster off of the windows, and the windows were scratched when one of his employees did so. *Id.* at 234, 239. Our supreme court held that the damaged windows were not under the care, custody, or control of the insured subcontractor because they were not "essential," or *necessary*, to the work of plastering walls and ceilings. *Id.* at 239–40.

¶ 10. In *Silverton*, the insureds were two companies in the business of repairing automobile transmissions. *Silverton*, 143 Wis. 2d at 669. They argued for coverage of damage to automobiles left in their garage for repair. *Id.* at 670. The court of appeals said that the cars were excluded from coverage by the "care, custody, or control" exclusion because "[s]upervision over an automobile left with plaintiffs for repair is a necessary element of the repair." *Id.* at 671.

¶ 11. Westfield argues that both *Meiser* and *Silverton* show that supervision is a "primary element of an insured's 'necessary work.' " Its brief states,

> The [*Meiser*] Court ultimately ruled that the windows were not in the "care, custody, or control" of the plasterer, after concluding that work on the windows were not an essential part of the plastering work. [*Meiser*, 8 Wis. 2d] at 240. It did so, however, by concluding that the *general contractor*, not the subcontracting plasterer, "*had supervision of all of the work on*

47

*the premises; he was on the job several times a day during the time the house was under construction; it was his obligation to take care of the premises; it was he who was responsible for the general cleaning up . . . ."*
*Id.* at 239. (Emphasis added).

Westfield goes on to liken Fontana, a general contractor in this case, to the general contractor in *Meiser,* pointing out that "[a]s general contractor, the law is clear that Fontana's 'essential work' was to supervise every component involving the materials, labor, and structure."

¶ 12. Westfield's argument ignores key elements of the *Meiser* and *Silverton* holdings. First, even if Fontana is like the general contractor in *Meiser,* that case was about the *subcontractor,* not the general contractor. *See Meiser,* 8 Wis. 2d at 239. In the paragraph quoted by Westfield, the *Meiser* court was drawing a comparison between the responsibilities of the insured subcontractor and the general contractor *in that case* to illustrate why the windows were not in the "care, custody, or control" of the insured subcontractor. *Id.* It said nothing about whether the windows were *legally* in the "care, custody, or control" of the general contractor.[3] So, the argument fails.

¶ 13. Second, Westfield's argument that supervision is, by definition, "necessary to the work involved" basically conflates the supreme court's two-element test

---

[3] It is true that the court's reasoning in *Meiser v. Aetna Cas. & Sur. Co.,* 8 Wis. 2d 233, 239, 98 N.W.2d 919 (1959), implies that it may have found that the windows were in the "care, custody, or control" of the general contractor. But Westfield's argument still fails because there is a big difference between saying that the windows of a house are a necessary element of the work involved in building a house, and saying that the personal property of the future owner of a house is a necessary element of the work involved in finishing its construction.

into a single element. As we stated above, the *Meiser/ Silverton* test for whether property is under the "care, custody, or control" of the insured has *two* elements: it must be under the supervision of the insured *and* necessary to the work involved. *Meiser*, 8 Wis. 2d at 236, 238; *Silverton*, 143 Wis. 2d at 670–71. To state that because Accola had close supervision of his own personal property, the supervision ipso facto was necessary to the work being done subsumes the necessity element into the supervision element of the test. That is not what the *Meiser* court intended.

¶ 14. We can understand why Westfield feels strongly, and why the trial court agreed, that the Accolas should not be able to sue Fontana to recover for damage done to their personal property based on the negligence of construction laborers who worked for and under James Accola himself. Indeed, the issue of James Accola's degree of supervision of the property may well be relevant to the merits of the potential negligence claim. But the odd facts of this case do not change the legal standard that must be applied under *Meiser* and *Silverton*.

¶ 15. In order to win under the "care, custody, or control" exclusion of its policy at the summary judgment level, Westfield had to show that the Accolas' personal property was necessary to the work being done by Fontana and this is something it has not done. Accordingly, we reverse the trial court's summary judgment in favor of Westfield and remand for further proceedings not inconsistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded.