NEUBAUER, C.J.
*289 ¶1 The Germantown School District and the Germantown School District Board of *290 Education (collectively the District) challenge the denial of their postverdict motion seeking attorney fees from their liability insurers. Contending that the insurers breached their duty to defend, the District requests its unpaid fees incurred in its defense as damages flowing from the breach as well as its fees incurred in establishing coverage under the equitable principles set forth in Elliott v. Donahue , 169 Wis.2d 310, 485 N.W.2d 403 (1992). We conclude that the District fails to provide sufficient proof and legal authority to show that the insurers' delay in paying for a defense constitutes a breach of their duty to defend. We also conclude that, because the insurers agreed to pay for the District's defense after the insurers' motion for a stay was denied, the unique circumstances of Elliott are not present and the insurers are not responsible for the District's own coverage-related fees. We affirm.
FACTUAL BACKGROUND
¶2 On July 16, 2013, the plaintiffs, a group of retired teachers and former employees of the District, sued the District, asserting breach of contract, breach of implied contract, breach of duty of good faith and fair dealing, and promissory estoppel.[1] The allegations arose out of the District's 2012 discontinuation of a group long-term care (LTC) insurance policy for active District teaching and professional staff employees after Act 10's alterations to collective bargaining in Wisconsin.[2] The plaintiffs alleged the District "knew or should have known that by discontinuing coverage" of *291 the LTC policy for active employees it violated the underwriting agreement with WEA Trust such that the plaintiffs and the members of the class would lose LTC group coverage.[3] *200 ¶3 To defend against the claims, the District retained the law firm of Buelow, Vetter, Buikema, Olson & Vliet, LLC (Buelow). Buelow had been advising the District regarding its potential liability for well over a year before the suit commenced.
¶4 After being served on July 31, 2013, the District tendered the defense of the suit to Employers Insurance Company of Wausau and Wausau Business Insurance Company (collectively the insurers). The insurers had issued multiple policies.[4] One policy, for example, covered "damages" from an "act, error or omission" that is "negligently committed in the 'administration' of [the] 'employee benefit program.' "
¶5 Based on their review of the complaint and policies, the insurers determined there was no coverage-essentially contending that the District's decision to terminate the LTC policy was a deliberate rather than a negligent act. By letter of August 8, 2013, the insurers advised the District of their no-coverage determination, explained the reasons for that determination, and indicated their "intent to intervene in the lawsuit and seek declaratory judgment with respect to *292 [their] obligation to defend or indemnify" the District. To allow the District an opportunity to respond, the insurers stated they would wait until after August 20 before moving to intervene.
¶6 On August 20, 2013, the District advised the insurers of its disagreement over coverage. On August 29, the insurers moved to intervene, to bifurcate the merits from coverage, and to stay the merits until coverage was resolved. The District had no objection to the insurers' motions.[5]
¶7 On December 12, 2013, the circuit court granted the motions to intervene and bifurcate, but denied the motion to stay the merits. The court denied the stay because it was "concerned" with the plaintiffs' assertion that about half of the retirees "are without LTC [and that a]ny substantial delays serve to increase the likelihood [the retirees] will incur the necessity of LTC [as they grow older], all the costs involved and the personal financial devastation that could ensue." The court believed that "[i]t should be possible to move the case forward on all fronts." Neither party challenges the court's denial of the stay as an erroneous act of discretion.
¶8 During this period, activity on the merits was minimal and the case remained in the pleading stages. In this regard, on August 20, 2013, the District moved to dismiss the plaintiffs' action. After briefing was completed by the last week of September, the parties awaited decisions on the District's motion to dismiss and the insurers' motion to intervene, bifurcate, and stay. The inactivity on the merits from late September to mid-December is reflected in the invoice *293 submitted by Buelow, which shows an average of about thirty-five minutes of legal services per week (seven hours over twelve weeks).
¶9 On December 19, 2013, the insurers filed a complaint for declaratory relief regarding their coverage duties. The District *201 also sought declaratory relief with a subsequent cross-claim.
¶10 On December 30, 2013, the insurers moved for summary judgment contending they owed no duties to defend and indemnify the District. In their brief, the insurers stated that, as a consequence of the denied request for a stay, they had "agreed to provide a defense under a reservation of rights until the coverage issues are decided." By letter of January 14, 2014, to the District, the insurers reiterated that they "will provide [the District] with a full defense against the claims alleged in the lawsuit" subject to a reservation of rights, including their "right to seek reimbursement of defense costs paid in this action in whole or in part to the extent permitted by applicable law." Noting that the District wanted to keep Buelow as its defense counsel, the insurers approved use of the firm "provided an agreement can be reached on the hourly rates" and requested Buelow's fee schedule.
¶11 On April 30, 2014, the District amended its cross-claim against the insurers, asserting breach of the duty to defend for having failed to reimburse the District for merits fees paid to Buelow.[6] The insurers denied the allegations of a breach.
*294 ¶12 Before this suit, Buelow had worked with the insurers in a number of other matters and had agreed in the course of that work to comply with the insurers' litigation and billing guidelines. Buelow and the insurers reached an agreement by June 2014 regarding Buelow's hourly rates in this case. They also reached some agreement at an unknown point regarding use of the guidelines, but the District contends the agreement did not necessarily apply to services rendered before the insurers agreed to defend.
¶13 At the insurers' request, Buelow resubmitted invoices for services rendered from July 16, 2013, through November 30, 2013, in the amount of $70,685.16.[7] Upon review, the insurers made deductions for violations of the guidelines and then paid $47,129.50.
*295 ¶14 For services rendered from December 1, 2013, through April 30, 2014, the insurers approved and agreed to pay $55,221.98 of $72,568.87. According to the insurers, deductions again were made for guideline violations.
¶15 The guidelines contain an appeal process by which Buelow may ask for reconsideration of any deductions made by *202 the insurers. The insurers note that Buelow had not filed an appeal of any deductions. The District asserts, however, that Buelow did not agree to having the guidelines, including its appeal process, apply retroactively for invoices issued before the insurers agreed to provide a defense.
¶16 In July 2014, the circuit court denied the insurers' summary judgment motion. Noting that the suit was "procedurally ... still at its beginning stages," the court concluded that there were disputes of material fact regarding what led to the termination of the LTC coverage that could not be resolved "at least at this stage of the litigation."
¶17 The coverage issue went to a jury trial in April 2016. The jury found that the District's conduct resulting in the termination of the LTC policy was a negligent act. In addition to moving for a judgment on the verdict that the insurers must indemnify the District in the event it was found liable, the District moved for its unreimbursed merits fees of about $50,000 due to the insurers' alleged breach of their duty to defend and for the attorney fees the District incurred in securing its right to a defense and establishing coverage pursuant to Elliott . The circuit court granted the motion in part and denied it in part. The court upheld the jury's finding and concluded the insurers would have to indemnify the District if found liable. However, without directly addressing the unreimbursed *296 merits fees, the court rejected the District's argument that the insurers breached their duty to defend. Because the insurers followed a court-approved procedure to resolve the coverage dispute, the District was not entitled to the fees it incurred relating to coverage.
¶18 As of June 22, 2016, the insurers allege they have paid $260,021.32 in fees and costs for the defense of the District, which apparently does not include the $55,221.98 they had agreed to pay for the services rendered from December 2013 through April 2014.
¶19 The merits case went to a jury trial in June 2017, resulting in a verdict for the District. Thus, there is no issue as to indemnity for the claims against the District. Nor is there a dispute about the insurers' payment of the District's defense fees for services rendered after April 2014 and through the June 2017 trial on the merits.
¶20 The District appeals from the circuit court's denial of its motion for attorney fees.
DISCUSSION
Standard of Review and the Duties to Defend and Indemnify
¶21 Whether an insurer breached its duty to defend requires interpretation of an insurance contract, which presents a question of law reviewed independently. Water Well Sols. Serv. Grp. Inc. v. Consolidated Ins. , 2016 WI 54, ¶ 12, 369 Wis.2d 607, 881 N.W.2d 285. Whether an insured is entitled to attorney fees in relation to coverage is also a question of law *297 reviewed independently. Reid v. Benz , 2001 WI 106, ¶ 12, 245 Wis.2d 658, 629 N.W.2d 262.
¶22 Liability insurance policies oblige an insurer to defend and to indemnify its insured. Olson v. Farrar , 2012 WI 3, ¶ 27, 338 Wis.2d 215, 809 N.W.2d 1. The duty to defend is broader than the duty to indemnify and requires a court, when determining whether the duty exists, to examine the complaint and the terms of the entire insurance policy. Water Well , 369 Wis.2d 607, ¶¶ 15, 17, 881 N.W.2d 285. The court looks to the nature of the claim, rather than its merits, and assumes without deciding that the allegations are true. Id. , ¶ 17. If the policy covers at least one of the claims, the insurer has a duty to defend *203 against all of the claims. Id. , ¶ 16. The duty to indemnify, in contrast, arises when a claim is shown to be covered and the insured is liable. Reid , 245 Wis.2d at 670, 629 N.W.2d 262.
¶23 When an insured tenders a suit to its insurer, and any disputes about coverage exist, Wisconsin courts "strongly encourage" the insurer to use one of several approaches. Water Well , 369 Wis.2d 607, ¶ 27, 881 N.W.2d 285. In this regard, the insurer may request a bifurcated trial, separating coverage from the merits, and move for a stay of the merits until coverage is determined. Id. Alternatively, a nonwaiver agreement could be reached, where the insurer defends and the insured acknowledges the insurer's right to challenge coverage. Id. As another option, the insurer may notify its insured that the insurer will proceed under a reservation of rights, with the insured providing and controlling its defense while the insurer remains liable for the *298 costs. Id. Also, the "insurer may choose to provide an initial defense and seek a declaratory judgment on coverage." Id.
¶24 Though preferred, no one of these approaches is required, and the insurer still has the option to unilaterally reject the tender and state its reasons for determining that the complaint does not trigger its duty to defend. Id. The insurer chooses this option, however, "at its own peril." Id. , ¶ 28 (citation omitted). If its unilateral rejection proves to be wrong, it is a breach of the defense obligation and the insurer exposes itself to a variety of potential consequences. Id. In general, the insurer "must pay damages necessary to put the insured in the same position [it] would have been in had" the insurer fulfilled its duty. Newhouse v. Citizens Sec. Mut. Ins. , 176 Wis.2d 824, 838, 501 N.W.2d 1 (1993). This means all damages, regardless of policy limits, which naturally flow from the breach, including the settlement or judgment amount plus interest and reasonable defense fees incurred by the insured. Id. ; Water Well , 369 Wis.2d 607, ¶ 28, 881 N.W.2d 285. An insurer's breach may also require it to pay the fees incurred by its insured relating to or establishing coverage. See Elliott , 169 Wis.2d at 322-23, 485 N.W.2d 403 ; Reid , 245 Wis.2d 658, ¶¶ 3, 23, 629 N.W.2d 262. Finally, when the insurer breaches its duty to defend, it is "at risk that its insured will pursue a successful first-party bad faith action," which includes the potential for punitive damages. Water Well , 369 Wis.2d 607, ¶ 29, 881 N.W.2d 285 ; see Brethorst v. Allstate Prop. & Cas. Ins. , 2011 WI 41, ¶ 5, 334 Wis.2d 23, 798 N.W.2d 467 (an insurer's breach of contract is a prerequisite for a first-party bad faith claim).
*299 The Timing of the Insurers' Agreement to Provide a Defense Did Not Constitute a Breach of the Duty to Defend
¶25 As a preliminary matter, we note that neither party disputes the circuit court's determination after the coverage trial that the insurers were obligated to defend and indemnify the District if liable. Nor does the District dispute that the insurers reimbursed all but about $50,000 in defense fees, and there is no dispute regarding the insurers' payments for defense fees incurred after April 2014 through the merits trial of June 2017, at which time the District was found not liable.
¶26 At issue is the District's contention that the insurers breached their duty to defend because their agreement to defend was "belated" and insufficiently "immediate."[8] As a result, the District asserts, *204 the insurers are liable for the damages which flow from the breach-the approximately $50,000 in unpaid merits defense fees. The District also contends that, because the insurers did not immediately assume the District's *300 defense and forced the District to handle both the defense of the merits and coverage, it is entitled to its fees incurred in securing a defense and establishing coverage under Elliott . We address, and reject, each argument in turn.
¶27 The District does not provide sufficient proof or legal authority to support its assertion that the timing of the insurers' agreement to defend constituted a breach. After being served on July 31, 2013, the District tendered the complaint to the insurers. On August 8, the insurers responded with a twelve-page letter reviewing the complaint's allegations and the terms of the various policies, notifying the District of the insurers' determination that the claims were not covered and the specific reasons for that determination, and advising that, "[c]onsistent with Wisconsin procedure," the insurers intended to intervene and seek a declaration "with respect to [their] obligations to defend or indemnify the [District]." The insurers indicated they would not intervene before August 20 in order to allow the District an opportunity to respond. After the District on August 20 disagreed with the insurers' determination, the insurers moved the following week to intervene, bifurcate, and stay.
¶28 The District fails to explain how the insurers' approach at this stage failed to comply with court-approved approaches to resolve a coverage dispute. In less than one month, the insurers considered, made, and explained their coverage determination, allowed time for the District to respond, and moved to intervene, bifurcate, and stay, having expressly communicated with the District that their purpose was to comply with Wisconsin recommended procedure.
¶29 The District notes, however, it took the insurers five months to agree to defend. But that fails *301 to acknowledge most of that time (over three months) consisted of awaiting the court's decision on the motions to intervene, bifurcate, and stay-the very type of motion preferred by Wisconsin courts. No fault is assigned to the insurers for the length of that interval. Moreover, no suggestion is made that substantial activity on the merits was taking place in the meantime; to the contrary, the record indicates otherwise, which stands to reason as the parties awaited not only a decision on the insurers' motions, but also on the District's motion to dismiss.
¶30 Whenever the insurers were obligated to respond, they did so in ways that could not be characterized as belated: within one week of receiving the District's tender, the insurers responded with a twelve-page letter explaining their position on coverage; within one week of learning that the District disagreed with their coverage position, the insurers moved to intervene, bifurcate and stay; and within about two weeks of the court's denial of the stay, the insurers decided to defend under a reservation of rights, followed up two weeks later with a thirteen-page letter *205 further explaining that decision. Furthermore, the insurers' agreement to defend was retroactive, meaning it included payment for merits fees since the lawsuit commenced. The District was also represented by counsel of its choice, and it has not identified any prejudice or damages suffered as a result of the delay.
¶31 The District fails to cite any authority suggesting that the passage of time between the District's tender and the insurers' acceptance of the defense constitutes a breach of the duty to defend, particularly when the insurers are actively pursuing a court-approved approach to resolving a coverage dispute. Case law actually suggests otherwise. See, e.g. , *302 Kenefick v. Hitchcock , 187 Wis.2d 218, 233 n.6, 522 N.W.2d 261 (Ct. App. 1994) (determining no breach of the duty to defend when the insurer obtained bifurcation and a stay of the merits, even though the claims were potentially covered and six months passed before bifurcation was requested), overruled on other grounds by Marks v. Houston Cas. Co. , 2016 WI 53, ¶75, 369 Wis.2d 547, 881 N.W.2d 309 ; see also Lakeside Foods, Inc. v. Liberty Mut. Fire Ins. , No. 2009AP1428, unpublished slip op. ¶ 1, 329 Wis.2d 270, 2010 WL 2836401 (WI App July 21, 2010) (determining no breach of the duty to defend solely for insurer's three-month delay in responding to tender, as insurer eventually agreed to pay and the insured had been represented by counsel of its own choice); American Design & Build, Inc. v. Houston Cas. Co. , No. 11-C-293, 2012 WL 719061, at *11 (E.D. Wis. Mar. 5, 2012) ("An insurer may investigate a claim before accepting the defense, so long as it reimburses the insured for the defense retroactive to the date of the claim.").
The District Fails to Show that the Unpaid Defense Fees Are Owed or Constitute a Breach of the Duty to Defend
¶32 The District also contends that, although the insurers eventually agreed to pay for its defense, they have refused to pay about $50,000 of defense fees and have effectively conceded they owe the fees. The District implies the lack of full payment constitutes a breach of the duty to defend. We reject the contentions as unsupported.[9]
*303 ¶33 The District's argument is based on the premise that the insurers undisputedly owe, by concession or otherwise, the unpaid merits fees. But the premise is false. Not only do we see no concession on the point, the insurers refute it in several ways, e.g., the subject fees violated the agreed-upon guidelines, Buelow had not appealed the unpaid fees with the insurers, the District's claim is not supported by the record, and the District has forfeited the argument in any event. Plainly, the issue is disputed.
¶34 Just as plainly, the District does not provide sufficient proof for us to determine as a matter of law that the amount is owing.[10] Whatever agreements *206 *304 were reached between Buelow and the insurers regarding rates and guidelines are not in the record, nor are the guidelines themselves. The District leaves us to guess as to the scope and details of the agreements, making it impossible to properly consider their unpaid fees argument and to address, for example, whether it was agreed that the guidelines applied to all of the invoices, whether the deductions were proper, and whether the guidelines required use of the appeal process. We will not consider arguments based on facts or documents that are unavailable or not referenced in the record. See State v. Pettit , 171 Wis.2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).
¶35 Moreover, the District provides no authority for the proposition that a disagreement over the particulars of fees under these circumstances constitutes a breach of the duty to defend. The District's reference to Patrick v. Head of the Lakes Cooperative Electric Ass'n , 98 Wis.2d 66, 72-73, 295 N.W.2d 205 (Ct. App. 1980), actually undercuts its argument, as it confirms that an insured is entitled to its merits fees (1) after a breach of the duty to defend has been established and (2) if a review of those fees shows them to be reasonable. In Patrick , the insurer refused to defend what turned out to be a covered claim, thereby requiring the insurer to pay for its insured's defense fees. The circuit court awarded only a portion of those fees. On appeal, the Patrick court held that the insured was entitled to the total amount, provided the fees were reasonable. Id. at 72-73, 295 N.W.2d 205. In contrast with Patrick , the District has not shown that the insurers breached their duty, nor has it provided a sufficient record to show that the unpaid fees were reasonable and owing.
¶36 The District also cites *305 Sauk County v. Employers Insurance of Wausau , 202 Wis.2d 433, 445, 550 N.W.2d 439 (Ct. App. 1996), for the proposition that an insurer must pay 100% of the insured's fees to avoid breaching its duty. The holding in Sauk does not support the District. In Sauk , the insured commenced an action which led to counterclaims against the insured. The issue was whether, in addition to paying to defend against the counterclaims, the insurer must also pay to prosecute the insured's own claims. While noting the "general rule" that "partial payment of defense costs does not satisfy an insurer's duty to defend," the court nonetheless determined that the insurer was not responsible to pay for prosecuting the insured's claims and held that there was no breach when the insurer paid only one-sixth of the fees, which was the percentage the insurer attributed to the defense of the insured. Id. at 445-46, 550 N.W.2d 439. Thus, in Sauk , the court approved the insurer's decision to pay only for those fees it was obligated to pay, which hardly resolves the fee dispute here in the District's favor.
Because the District Was Not Forced to Simultaneously Defend the Merits and Establish Coverage, It Is Responsible to Pay for Its Own Coverage-Related Fees
¶37 Finally, the District argues it is entitled to recover the attorney fees and *207 costs it has incurred in securing its merits defense and establishing coverage. The District's argument rests on Elliott , which noted an exception to the American Rule that generally requires litigants to bear their own costs.
¶38 In Elliott , the insurer denied coverage and advised its insured to obtain its own counsel on the merits, which the insured did. The insurer then requested a bifurcated trial on coverage, which the court ordered. The insurer did not request the proceedings *306 on the merits to be stayed while coverage was being resolved; the merits proceedings continued, requiring the insured to pay its own merits defense fees. The jury found coverage, prompting the insurer to assume the defense and settle the case. The insured asserted it was entitled to attorney fees it incurred in successfully establishing coverage. The Wisconsin Supreme Court agreed, pointing out that the insurer did not comply with one of the preferred approaches to resolving coverage disputes, having neither provided a defense nor having requested a stay of the merits, thereby forcing the insured to pay attorney fees for both aspects of the case. Elliott , 169 Wis.2d at 318, 322, 485 N.W.2d 403. The court determined a fee award for these circumstances was "proper under the principles of equity" and authorized under WIS. STAT. § 806.04(8) (permitting a court to grant relief "whenever necessary or proper" in a declaratory judgment action). Elliott , 169 Wis.2d at 324, 485 N.W.2d 403.
¶39 Elliott was followed, and limited, by Reid . In Reid , the insurer provided a defense to its insured under a reservation of rights and moved to bifurcate and stay. On the motions, the circuit court found in favor of coverage, determining the insurer had duties to defend and indemnify. On appeal, the issue was whether the insured was entitled to reasonable attorney fees she incurred to establish coverage under Elliott , even though there was no breach of a duty to defend. Reid , 245 Wis.2d 658, ¶ 29, 629 N.W.2d 262. Reid rejected the argument, explaining that it was the inequitable circumstances in Elliott that led to the award of fees, namely, the insurer had forced its insured to defend himself on the merits at his own expense while simultaneously contesting coverage, which in turn required the insured to incur more fees. Reid , 245 Wis.2d 658, ¶ 23, 629 N.W.2d 262. Because the award in Elliott "diverg[ed] from the *307 deeply-rooted dictates of the American Rule" and "should not be the usual result," courts "have expressly declined" to apply Elliott outside of its particular facts and equitable considerations. Reid , 245 Wis.2d 658, ¶¶ 2-3, 27-28, 629 N.W.2d 262 (citation omitted).
¶40 The special circumstances and equitable considerations in Elliott are not present in this case. In addition to moving to intervene and bifurcate, the insurers here, unlike in Elliott , moved to stay the merits until coverage was resolved. This is the basic procedure outlined by Wisconsin courts. Elliott , 169 Wis.2d at 317-18, 485 N.W.2d 403. The Elliott court explained that "[t]o be entirely consistent with" a court-approved approach, "the insurer should not only request a bifurcated trial on the issues of coverage and liability, but it should also move to stay any proceedings on liability until the issue of coverage is resolved." Id. at 318, 485 N.W.2d 403. As the Reid court stated repeatedly, where the insurer fails to follow that procedure, it "breaches the duty to defend by requiring the insured to incur attorney fees to defend him or herself on the issue of liability and to litigate coverage simultaneously." Reid , 245 Wis.2d 658, ¶¶ 3, 16, 19, 21-23, 35, 37, 629 N.W.2d 262.
¶41 What is clear from Elliott and subsequent Wisconsin cases is that the breach *208 arises from forcing an insured to simultaneously pay attorneys to defend the merits and to establish coverage. That can be averted by either receiving a stay on the merits or providing a defense on the merits if a stay is denied; either way, the insured only has to pay its own fees regarding coverage, which is in keeping with the *308 American Rule.[11] Here, after the circuit court denied the stay, the insurers agreed to pay the defense fees (since commencement of the lawsuit), such that the District only had to pay its own fees regarding coverage. Reid and the American Rule apply.
By the Court. -Judgment affirmed.

The plaintiffs are Roger Choinsky, Gary Finn, William Gay, David Kliss, Carol Rudebeck, and Janice Weinhold. They represented, as members of a class action, about ninety former District employees. They are not parties to this appeal.

See 2011 Wis. Act 10.

Upon retirement, the plaintiffs could individually contract with WEA Trust for continuation in the LTC policy at the same rate for active employees. When the District discontinued the LTC policy for active employees, WEA Trust required retirees to convert their policies from a group plan to individual plans. The result was a sharp cost increase.

Wausau issued general liability policies, which included an employee benefits liability coverage endorsement. Employers issued an educators legal liability policy and umbrella liability policies.

Although not objecting to the requested intervention, bifurcation, or stay, the District did disagree with the insurers' proposed scope of discovery if the stay were to be granted.

In its amended cross-claim, the District alleged that it had notified the insurers in January and again in March of Buelow's fee schedule, but received no response from the insurers. In reply, the insurers admitted receiving Buelow's fee schedule, alleged the schedule had rates different from rates previously approved by the insurers for Buelow's defense of school districts in other cases, and denied they provided no response. The District further alleged it had twice advised the insurers in April of the amount of the merits fees incurred and requested reimbursement, but received no response. In reply, the insurers admitted receiving two letters from the District in April, alleged that the letters spoke for themselves, and denied that they provided no response.
Although the District makes a few references to these contested allegations from the pleadings on appeal, it does not incorporate them into its arguments, nor does it cite to evidence in the motion materials.

The District claims the total amount for services from July 16, 2013, to November 30, 2013, was $80,541.66, as opposed to $70,685.16. The insurers assert that the discrepancy of $9,856.50 was due to an August 6, 2013 invoice they had not received. The District cites an affidavit of a Buelow attorney, which states that the invoice was sent to the insurers on October 13, 2014. Neither party addresses the significance, if any, of the invoice being submitted to the insurers more than fourteen months after its original issuance.

The District's argument at the outset suffers from a fundamental misunderstanding of the circuit court's decision. The District asserts the circuit court "ruled that [the insurers] breached their duty to defend" but the court then "failed to take the next step of considering the District's motion for attorney's fees as damages." The District is mistaken, as the court had reached the opposite conclusion. Applying the jury's finding that the District's conduct was not intentional, the court determined the insurers would have to indemnify the District if it was liable. But the court also explicitly determined that the insurers complied with a procedure recommended by Wisconsin courts as to how to resolve a coverage dispute and specifically concluded they therefore "did not breach their duty to defend."

The insurers respond, in part, that the District forfeited this argument, as the District did not seek a determination from the circuit court as to whether the $50,000 had been paid or should be paid, nor did the court's decisions on coverage address the matter. We generally do not address arguments raised for the first time on appeal. See Nickel v. United States , 2012 WI 22, ¶ 31, 339 Wis.2d 48, 810 N.W.2d 450. Assuming without deciding that the District sufficiently raised this issue in the circuit court, we choose to address it, but reject it as insufficiently supported and developed.

The following facts appear to be supported by the record and otherwise not in dispute: For services rendered through November 2013, the insurers received invoices for $70,685.16 and paid $47,129.50; for subsequent services rendered through April 2014, the insurers received invoices for $72,568.87 and had approved a payment of $55,221.98; Buelow and the insurers reached an agreement by about June 2014 regarding Buelow's hourly rates; Buelow and the insurers had reached an agreement regarding use of the litigation and billing guidelines, but not necessarily with respect to services rendered before the insurers agreed to pay for a defense; the shortfalls between Buelow's invoices and the amounts that the insurers agreed to pay were due to deductions made by the insurers for, as claimed by the insurers, violations of the guidelines; Buelow had not contested any deductions through an appeal process provided by the insurers; and, as of June 2016, the insurers had paid about $260,000 for the merits defense of the District.

The Dissent asserts we err by failing to use the four corners of the complaint test as well as by relying on extrinsic evidence. Dissent, ¶¶43-47, 49. But that test and its bar against extrinsic evidence apply when the question is whether a duty to defend exists. Here, the insurers themselves do not dispute they had a duty to defend. The case had long moved past that question and instead asks whether the duty to defend was in fact breached when the insurers delayed before accepting the defense under a reservation of rights while moving to intervene, bifurcate, and stay. The Dissent claims these actions amounted to a unilateral rejection of the defense, constituting an automatic breach. The Dissent is mistaken on both the facts and the law. The insurers, of course, did not refuse to defend unilaterally. They instead promptly moved to intervene, bifurcate, and stay-one of the judicially preferred approaches, see Water Well Solutions Service Group Inc. v. Consolidated Ins. , 2016 WI 54, ¶ 27, 369 Wis.2d 607, 881 N.W.2d 285 -and then, after the stay was denied, promptly accepted the defense. As we discussed, supra ¶¶32-36, whether the insurers' conduct after accepting the defense amounted to a breach in the performance of their defense duty was neither factually nor legally supported.